INTERNATIONAL BOOM COMPANY and Another v. RAINY LAKE RIVER BOOM CORPORATION.[1]

April 27, 1906.

Nos. 14,593—(8).

**Corporation—Nature of Business.**

In determining the character of a corporation reference must be had to that portion of its articles of association expressing the nature and scope of its business.

**Same.**

It cannot be made one kind of corporation merely by being labeled as such, if its declared objects show it to be something else.

**Boom Corporation.**

Defendant in this action, though its articles of association state that it was incorporated under title 2, c. 34, G. S. 1894, was in fact, as shown by its declared objects, organized for the purpose of improving Rainy Lake river, to facilitate and render the driving of logs thereon practicable, by locating therein booms and sorting works, and for conducting and carrying

[1]Reported in 107 N. W. 735.

97 M.—33

on the business of storing, sorting, booming, and handling logs thereon—
the business contemplated by chapter 221, p. 350, Laws 1889, amendatory
of title 1, c. 34, G. S. 1894. As such, it is entitled to all the benefits of that
statute.

**Case Distinguished.**

Northwestern Imp. & Boom Co. v. O'Brien, 75 Minn. 335, distinguished.

**Contract.**

Evidence *held* to show a contract pursuant to which defendant collected,
sorted, and handled plaintiff's logs as they were driven down the Rainy
Lake river past its sorting works during the season of 1904, and that it
is entitled to reasonable compensation therefor.

**Lien.**

To enforce payment of which it possesses a lien upon the logs in con-
troversy in this action by virtue of the statute above referred to, and is
entitled to retain possession of the same until the same is paid and dis-
charged.

**Partial Delivery—Waiver.**

There was no waiver of defendant's lien by the surrender and delivery
of part of the logs handled during the season. The lien created by the
statute extends to all logs with reference to which labor and services are
performed by corporations of this character, and may be enforced as an
entirety against any portion of the logs.

Appeal by defendant from an order of the district court for Beltrami
county, McClenahan, J., denying a motion for a new trial. Reversed.

*H. Steenerson* and *Charles Loring,* for appellant.

*C. J. Rockwood,* for respondents.

BROWN, J.

Action in claim and delivery to recover the possession of one million
feet of pine logs owned by plaintiffs, which they claim defendant
wrongfully and unlawfully detains. A verdict was directed in the
court below for plaintiffs, and defendant appealed from an order deny-
ing its motion for a new trial.

The facts are as follows: There is no controversy about plaintiffs'
title to and ownership of the logs, and unless the defense interposed
by defendant is sustained by the evidence, a verdict was properly di-
rected in their favor. Defendant claimed a right to possession of the
logs under the provisions of chapter 221, p. 350, Laws 1889, for the
purpose of enforcing a lien thereon for services rendered in handling,

sorting and storing the same at the instance of plaintiffs. This claim of lien arises out of the following facts: Defendant is a corporation organized, as expressed in its articles of association, under title 2, c. 34, G. S. 1894. The general nature of its business, as stated in its articles, is

> To construct, maintain and operate one or more booms for the collection, safe-keeping, scaling and delivery of logs and lumber, and the charging and collection of reasonable tolls and compensation therefor, to be fixed from time to time by the board of directors of the company; said booms, fixtures and appurtenances belonging thereto to be upon and adjoining the southerly shore of the Rainy Lake river * * * in Beltrami and Itasca counties in the state of Minnesota.

Its incorporation was fully and duly perfected in February, 1889, and soon thereafter it constructed its works, consisting of a dam in the river, booms for the collection of logs, a sheer boom to aid in driving them into the boom, and sorting works, made up of devices for separating logs belonging to different owners. It has continued to conduct and operate its business at all times since its incorporation, collecting, sorting, and storing logs as they were floated and driven down the river during each and every logging season, and in the construction and equipment of its works has expended in the neighborhood of $40,000. On April 24, 1889, two months after defendant was incorporated, the legislature enacted chapter 221, p. 350, general laws of that year, under which defendant asserts its lien. Section 1 of that act provides, in substance and effect, that any corporation organized under title 1 of chapter 34, G. S. 1894, in whole or in part for the improvement of any stream for driving, holding, or handling logs therein, which shall have taken possession of such stream, or any considerable portion thereof, and "which may have need of improvement for that purpose," shall have power to improve the stream and its tributaries by clearing and straightening the channels thereof, erecting sluiceways, booms of all kinds, side rolls, sluicing and flooding dams, or otherwise, if necessary, not, however, in such manner as to obstruct navigation upon the stream so improved. It further provides that every corporation so improving any such stream and

keeping the same in repair, so as to render the driving of logs thereon reasonably practicable and certain, may charge and collect reasonable tolls upon all logs and lumber driven, sluiced, or floated through the same. Section 3 makes the provisions of the act applicable to corporations created prior to its passage, as well as those subsequently incorporated.

During the logging season of 1904, a large number of logs owned by plaintiffs, in the neighborhood of twenty eight million feet, were driven down the Rainy Lake river and into defendant's booms and other works, where they were sorted by its servants and agents, assisted by plaintiffs' employees after May 31, placed in sack booms, and delivered to plaintiffs, and by them taken to a sawmill operated by them about four miles further down the stream. At the opening of the logging season, plaintiffs communicated to defendant a list of their log marks, and thereafter defendant received, sorted, and handled all logs belonging to plaintiffs, with their knowledge, acquiescence, and consent, until May 31, 1904, when they caused to be written and delivered to defendant the following letter:

Rainy River, Ontario, May 31, 1904.

To the Rainy Lake River Boom Corporation and Its Officers and Employees—Gentlemen:

You will please take notice that the Namakan Lumber Company owns and is in possession of and controls all the logs in Rainy river and its tributaries bearing the following marks:

Stamp Marks:                                    Bark Marks:

(MARKS OMITTED.)

Also that the International Boom Company is engaged in driving all those logs to the boom and pond of the Rainy River Lumber Company, Ltd., at Rainy River, Ontario. Also that the company is ready and intends to furnish its due share and proportion of all the men, tools, and equipment needed for driving and sorting all the logs on the river; that it hereby demands the opportunity to participate in the driving and sorting of the logs on the river and demands to be informed what is its proper share and proportion of the men, tools, and equipment to be furnished.

You will further take notice that this company will not pay you or anyone else for doing the driving and sorting, or furnishing the men, tools, or equipment which it so offers to do and furnish for itself.

Yours truly,
INTERNATIONAL BOOM COMPANY,
By J. A. MATTHIEU.

Notwithstanding this notice, all logs thereafter driven down the river by plaintiffs were run into defendant's booms, where they were sorted and delivered as before, though plaintiffs furnished a crew of men to assist in doing the work. No request or demand was made by plaintiffs that defendant remove its booms or other works, so that plaintiffs might pass through unobstructed by them; but they made use of defendant's works in handling all their logs during the entire season, though after May 31 under the claim, as expressed in the letter, that they were not liable to defendant and would not pay it for its services after that date. Possession of the logs in controversy was held by defendant to enforce compensation for services rendered upon the entire season's drive. The question presented is whether its claim of lien is valid and well founded.

Several questions are presented and discussed in the briefs of counsel. It is contended by defendant that it is entitled to a lien upon the logs in controversy, under the statute referred to, for the labor bestowed upon the entire season's drive and also by virtue of a contract with plaintiffs pursuant to which defendant performed the labor, and that the trial court erred in holding to the contrary. It is insisted on the part of plaintiffs that defendant is not entitled to the benefits conferred by the statute for the following reasons: (1) That it was not incorporated under the provisions of title 1, c. 34, G. S. 1894, of which chapter 221, p. 350, Laws 1889, is amendatory, but, instead, under the provisions of title 2 of that chapter, and therefore does not come within the class of corporations referred to in the act of 1889; (2) that its articles of incorporation do not authorize it to engage in the business contemplated by the statute; (3) that the Rainy Lake river does not come within the scope of the statute because it does not appear "to have been in need of improvement"; (4) that defend-

ant made no improvements in the river within the meaning of the statute, and never took possession of any considerable portion thereof; and (5) that the statute was not intended to apply to a stream of water of the character of Rainy Lake river, forming, as it does, the international boundary between the United States and Canada, and, if it be held to apply to that stream, that it is unconstitutional and void.

We dispose of the several contentions of plaintiffs first. If they be sound, the order appealed from must be affirmed.

The theory on which the trial court directed a verdict for plaintiffs was that defendant's articles of association do not bring it within the provisions of the statute upon which reliance is had in support of its claim of lien, citing in support of its ruling Northwestern Imp. & Boom Co. v. O'Brien, 75 Minn. 335, 77 N. W. 989. The learned trial court was in error. The corporation involved in the O'Brien case was organized "for the purpose of improving the navigation of Kettle river for logs, lumber, and timber," including the building of piers, booms, sluices, flooding dams, and such other structures as might be necessary in order "to facilitate the driving, floating, holding, handling and assorting of logs" upon that stream. The court held in that case that the purposes of the corporation thus expressed were not broad enough to confer upon it the benefits of the statute in question; that, inasmuch as the corporation by its articles of association did not vest itself with authority to drive or handle logs at its booms and other works, it had no authority to engage in that business and no right to collect tolls provided for by the statute. The articles of incorporation of defendant in the case at bar are much broader than those involved in that case. In this case defendant was organized for the purpose of constructing, maintaining, and operating one or more booms on the Rainy Lake river, and for the purpose of collecting, safe-keeping, and delivering logs and lumber floated down the stream past its works. It was incorporated, not for the mere purpose of improving the river to facilitate the driving and handling of logs thereon, but for the purpose of storing and handling logs. This distinguishes the case at bar from the O'Brien case.

It is urged by plaintiffs that, inasmuch as defendant was not in-

corporated under title 1, c. 34, but instead under title 2 of that chap-
ter, the statute here involved has no application. We do not concur
in this view. It is true that defendant's articles of association state
that it was incorporated under the provisions of title 2, but that is
not conclusive. In determining the real character of a corporation
reference must be had to that portion of the articles of association
expressing the general nature of its business. It cannot be made one
kind of corporation merely by being labeled as such, if its declared
objects show it to be something else. State v. Minnesota Thresh.
Mnfg. Co., 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510. Taking
defendant's articles of incorporation as a whole, it is clear that it was
incorporated for the purpose of carrying on and conducting the busi-
ness authorized by the act of 1889. It must therefore be held to come
within and be entitled to the benefits of that statute.

It is also insisted by plaintiffs that the Rainy Lake river at the
point where defendant's works were constructed was not in need of
improvement for the purpose of carrying on the business of floating
and handling logs thereon; that defendant did not, as a matter of
fact, improve the river within the meaning of the statute, nor take
possession of any considerable part of it. This position cannot be
sustained.

The statute authorizes a corporation formed for the purpose of
carrying on the business contemplated by it to take possession of any
part of the river, not previously occupied by some other corporation,
and improve the same for the purpose of rendering the floating and
handling of logs and lumber thereon reasonably practicable and cer-
tain. The improvement referred to does not mean exclusively im-
provements in the river proper—i. e., straightening its banks, deepen-
ing its channel, or removing obstructions therein; but the construction
of such works as are necessary and incident to the practicable con-
duct of that sort of business. It provides that any corporation so
taking possession of any part of such stream shall have power to im-
prove the same by clearing and straightening its channel, or, by erect-
ing booms, dams, sluices, and such other works as shall be necessary
to render the driving of logs practicable. The erection of dams, booms,
sluiceways, and other necessary works incident thereto must be treated

as an improvement in the river, within the meaning of the statute. Osborne v. Knife Falls Boom Corporation, 32 Minn. 412, 21 N. W. 704, 50 Am. Rep. 590, and cases cited in the opinion. That the river was in need of improvements of this character is conclusively shown by the record. Without some such works the driving and floating of logs thereon would be impracticable. There would be no way of intercepting the logs as they floated down the stream or preventing their passing into the Lake of the Woods, where, by reason of its size, fifty miles wide by one hundred miles long, they would be driven by wind in all directions and lost to the owners. That defendant took possession of a considerable portion of the river does not seem to be open to serious question. Their booms and sorting works were located on the Minnesota side, the sheer boom extending diagonally across the river near the Canadian shore. A considerable portion of the river was thus occupied with their works.

It follows from what has been said that defendant was incorporated for the purpose of carrying on the business contemplated by the act of 1889, and is entitled to the benefits of that statute, unless the further contention of plaintiffs to the effect that the statute has no application to Rainy Lake river, because an international boundary, is sound. In the view we take of the case, that question is not necessarily involved. From the fact, which the evidence clearly shows, that plaintiffs acquiesced in defendant's possession of the river and the operation of its works, at no time questioning its right to do so, but utilizing the same in handling their logs, they are in no position to raise this question, even if it be conceded that it is not the province of the government alone to call in question the right of defendant in the premises. Lindsay & Phelps Co. v. Mullen, 176 U. S. 126, 20 Sup. Ct. 325, 44 L. Ed. 400. If, then, the labor and services performed by defendant, and for which it claims a lien, were performed under a contract with plaintiffs, express or implied, the validity of the statute as applied to this particular stream of water is not involved. The question would be involved if defendant sought to enforce its asserted lien solely under the statute.

A careful examination of the evidence leads to the conclusion that the question whether the labor and services rendered by defendant in

handling and storing plaintiffs' logs during the logging season of 1904 were performed under and pursuant to a contract with plaintiffs was at least a question for the jury to determine, though it occurs to us that the evidence conclusively shows an implied contract. The trial court undoubtedly would have submitted the question to the jury, had it not been of opinion that defendant's articles of association did not bring it within the operation of the statute. Defendant had been operating its works in this river for fifteen years, which fact was known to plaintiffs. At the opening of the logging season of that year they communicated to defendant a list of their log marks, and thereafter as the logs came down the river they were collected, handled, and sorted by defendant, and delivered to plaintiffs in sack booms, until May 31. Plaintiffs could have communicated to defendant the list of their log marks for no other purpose than to enable defendant to collect and separate their logs as they came down the river mingled with logs of other owners, and that was undoubtedly the purpose of the notice. That plaintiffs understood that defendant was to handle their logs, that it did handle them, and that they received the benefits of its labor and services, conclusively appears from the evidence. This state of affairs continued until May 31, when the letter was delivered to defendant by which plaintiffs claimed the right to handle their own logs. This letter is not by any means conclusive that the previously existing contract was then brought to an end. In view of the undisputed fact that plaintiffs continued after the date of that letter to make use of defendant's works, and that their logs were there sorted and delivered to them precisely as before, the letter might well be treated as a mere assertion on their part of the right to make use of defendant's booms and other works without compensation. Of course, this they could not do. Having made use of the booms and sorting works, the law implies an obligation on their part to pay the reasonable value thereof, notwithstanding they may have furnished a crew of men to assist in the work. Had the evidence shown that plaintiffs' logs could not pass defendant's works by reason of their immovability or other cause, and that they had made demand that the booms be opened or removed to permit them to pass through, a different question would be presented. But

there is no evidence in the record showing such a condition. On the contrary, it affirmatively appears that defendant's sheer boom was so constructed that it could be opened to permit logs to pass down the river without going through its sorting works at all, and that it was opened whenever request was made.

It follows that defendant is entitled to reasonable compensation for handling plaintiffs' logs during the logging season of 1904, and to enforce payment thereof is entitled to a lien upon the logs in controversy in this action. There was no waiver of the lien by the surrender of the possession of a part of the logs handled during the season. The statute does not give a lien upon each log, nor require that it be enforced against any particular logs. The season's drive must be taken as one continuous transaction, and, the logs in controversy being part and portion of the entirety, the lien for logs previously handled during the season may be enforced against them. The fact that plaintiffs furnished men to assist in the work after May 31, if it be a fact, would be a proper matter for the consideration of the jury in determining the value of the services of defendant.

Order reversed and new trial granted.