## JAMES L. PRICE v. MINNESOTA, DAKOTA & WESTERN RAILWAY COMPANY and Another.[1]

July 2, 1915.

Nos. 19,296—(189).

**Malicious prosecution — pleading.**

1. Two causes of action, each for malicious prosecution, *held* to arise

[1] Reported in 153 N. W. 532.

Note.—The authorities passing upon the advice of counsel as defense to action

out of transactions connected with the subject of action, and to each affect all the parties to the action, and therefore to be properly united in one complaint.

**Motion to dismiss.**

2. Certain motions to dismiss made at the close of plaintiff's case and again at the close of all the testimony, *held* properly denied.

**Probable cause.**

3. The determination of the trial court and jury that there was no probable cause is *held* correct.

**Malice.**

4. The finding of the jury that there was malice is sustained by the evidence.

**Advice of counsel.**

5. The defense of advice of counsel was properly for the jury to determine, and the evidence sustains the verdict on this issue.

**Damages not excessive.**

6. The damages are not excessive within the rule guiding this court in cases of this kind.

**Requests to charge.**

7. There was no prejudicial error in the rulings on evidence, in the charge or in the refusal to give requested instructions.

**Misconduct of counsel — motion for new trial.**

8. A claim of misconduct of counsel cannot be urged as ground for reversal, unless it is made a ground of the motion for a new trial in the court below.

Action in the district court for Koochiching county to recover $5,500 for malicious prosecution. The case was tried before Wright, J., who when plaintiff rested denied motions to dismiss the action as to defendant railway and lumber companies and granted motions to dismiss as to the other defendants, and a jury which returned a verdict for $3,250. From an order denying their motion for a new trial and from the judgment entered pursuant to the ver-

for malicious prosecution are reviewed in the notes in 18 L.R.A.(N.S.) 49 and 39 L.R.A.(N.S.) 207. For cases passing upon advice of counsel as affecting liability for exemplary damages for malicious prosecution, see note in 29 L.R.A. (N.S.) 281.

dict, defendant railway company and defendant lumber company appealed. Affirmed.

*Harris Richardson* and *Walter Richardson,* for appellant.

*Arnold & Arnold,* for respondent.

BUNN, J.

This action was brought to recover damages for malicious prosecution. The original defendants were the appellants here and Minnesota & Ontario Power Co., R. S. McDonald, R. L. Horr, R. J. Young, George S. Langland, John D. McKay and W. H. Forier. Horr and McKay were not served with summons and did not appear. Before the close of the trial the action was dismissed as to all of the defendants except Minnesota, Dakota & Western Railway Co. and International Lumber Company. There was a verdict for $3,250 against these defendants jointly. They appeal to this court from an order denying a new trial, and also from a judgment entered on the verdict.

The principal contentions of defendants on this appeal are these: (1) There was a misjoinder of causes of action; (2) it was error to deny motions to dismiss made by each of the appealing defendants as to each cause of action; (3) there was probable cause; (4) there was no malice; (5) the second of the two prosecutions was begun on advice of counsel. There are also claims of excessive damages, error in the rulings on evidence and in the charge, and a claim of misconduct of counsel. The facts necessary to understand the various questions are somewhat complicated, but we regard the following statement as a sufficient general outline.

The Watrous Island Boom Co., a corporation which appears to have no active agents or employees and the capital stock of which is largely owned by the defendant railway company, owns booms, sorting and hoisting works in the Rainy river, extending from the mouth of the Black river up past the mouth of the Big Fork river. Defendant International Lumber Co. operates the plant of the Watrous Island Co., and manufactures lumber in its mill at International Falls. Defendant railway company operates a line of railroad connecting the plant with the mills of the lumber company; a line

runs parallel with the Rainy river on the Minnesota side and crosses the Big Fork river about a mile from its mouth. The lumber company owned a controlling interest in the stock of the railway company. Mr. E. W. Backus was the president and general manager of both these corporations, and also of defendant Minnesota & Ontario Power Co., a corporation which operated pulp and paper mills, and which owned a minority of the stock of the lumber company. Defendant R. S. McDonald was a stockholder in both the railway company and lumber company, was a director of the former, and superintendent of the latter. Defendant Horr was a stockholder in both companies, a director in the railway company and secretary of the lumber company. He was a brother-in-law of Mr. Backus.

The Shevlin-Mathieu Lumber Co. and allied "Shevlin concerns" have mills down the river at Spooner and Beaudette. They had great quantities of logs in the Big Fork river which they had been unable to get out for two seasons. In May, 1912, the Watrous Island Co.'s boom was full of logs; logs were held in a pocket just above the mouth of the Big Fork by a boom which sagged one-fourth of the distance across the mouth, and 10 boom sticks of a total length of about 400 feet hung down river from this sag-boom across the mouth of the Big Fork, which was about 600 feet in width at this point. This was quite effective to prevent the passage of logs from the Big Fork into and thence down the Rainy river to the booms and mills of the rival concerns.

On the morning of May 10, 1912, plaintiff and William Bartlett, who were engaged in making a drive of the Big Fork on behalf of the Shevlin interests, blew out with dynamite the pocket boom at the mouth of that river. In the afternoon of that day they were arrested on a "John Doe" warrant issued on the complaint of defendant McDonald. They were taken to International Falls, bound over to the grand jury, and released on bail. The grand jury afterwards found "no bill." This prosecution constitutes the basis of the first cause of action set out in the complaint.

On May 12, 1912, plaintiff and Bartlett were again arrested, this time on a warrant issued on the complaint of defendant Horr·

charging them with blowing out, on May 10, one of the piers in the Big Fork river above the railroad bridge. These piers were three or four in number and were set in the river some 500 feet above the bridge. The complaint on this charge was dismissed by the committing magistrate. This prosecution is the basis of the second cause of action.

Defendant Forier was sheriff of Koochiching county, and made the arrest of plaintiff under the McDonald warrant. Defendant Langland was municipal judge of International Falls and as such issued the warrant, and held plaintiff and Bartlett to the grand jury. Defendant McKay was a lawyer employed in the prosecutions, defendant Young, assistant manager of the power company.

The boom of the Watrous Island Co. had been blown out on the ninth at a point just below the mouth of the Big Fork, and logs confined in the boom, some belonging to the defendant lumber company, and some to down-river owners, escaped and went down the river. It does not appear who did this. Employees of the lumber company were engaged in repairing this break. The pocket boom which hung down stream from above the mouth of the Big Fork and extended part way across the mouth of that river was filled with logs, stored there by the lumber company to be later let down into its booms and sorted. Many of the logs in this pocket boom belonged to defendant lumber company, and when plaintiff and Bartlett blew out the pocket boom on the tenth these logs escaped down the river. In the sorting works below defendant lumber company picked out its own logs and all these were hoisted out of the water and taken back up the river either to its mill or the mill of the power company by train. The logs belonging to the Shevlin people and other mill-owners below were sorted out and allowed to go down the river. When logs belonging to defendant escaped down the river, there was apt to be great loss.

It is reasonably clear that conditions at the mouth of the Big Fork constituted an obstruction to the passage of logs from that river into the Rainy, and thence to the down-river mills, whose owners were then making a "clean drive" of the Big Fork. It is clear also that the booms and sorting works of the Watrous Island Co.

had not the capacity to hold or handle the logs in the Big Fork. That the situation was serious and likely to bring trouble seems to have been appreciated by McDonald, as there is evidence that on the ninth he begged the superintendent of the Big Fork drive not to blow up the booms, promising to do something to give relief. Instead of removing part of the obstructions McDonald ordered closed up a gap which had been left, went to International Falls and held a consultation with other Backus officers and attorneys. The report of the blowing out of the pocket boom reached McDonald, and he caused a warrant to be issued for the arrest of John Doe and Richard Roe. McDonald, in company with the sheriff, a deputy, Horr, Young and an attorney took a special train for the Watrous Island Co.'s plant at Loman, above the mouth of the Big Fork. There they secured employees of the lumber company, who were appointed deputy sheriffs, and all proceeded by the train back to the bridge across the Big Fork, where they found plaintiff and Bartlett, and arrested them. There is testimony that McDonald directed the sheriff to arrest these men, though he denies this, claiming that he did not know they were the men who had committed the act charged against Doe and Roe. At this time, on the order of McDonald, a boom was stretched across the river above the bridge, and an injunction served on Bartlett restraining him from removing this boom. Plaintiff and Bartlett were then taken to International Falls, held to the grand jury and released on bail.

On Sunday, May 12, while plaintiff and Bartlett were at large on bail, Horr caused the warrant to be issued charging them with having, on the tenth, blown out the pier above the bridge. Another special train carrying the sheriff, or a deputy, Horr, Young and others, proceeded to the bridge, where McDonald and attorneys had come from Loman. Plaintiff and Bartlett were found in their camp there, about to retire for the night. They were arrested, brought to International Falls, and kept in jail until Tuesday morning. There is evidence that Horr gave as a reason for this arrest that the men were out on bail and "he was afraid they might do something."

This is sufficient as a general statement; other evidentiary facts will be referred to as the different questions presented are discussed.

1. The question of misjoinder of causes of action was presented by separate demurrers to the complaint, and the order overruling the demurrers is assigned as error on this appeal. Two causes of action, each for the alleged malicious prosecution of a criminal charge, are attempted to be joined in one action. It is claimed that these two causes of action do not arise out of "the same transaction, or transactions connected with the same subject of action." G. S. 1913, § 7780, subd. 1. It is further contended that each cause of action does not affect all the parties to the action, as is the requirement of the same statute. As all the defendants other than the appellants here, the railway company and the lumber company, prevailed in the action and are not complaining of the order overruling the demurrers, we will not consider whether the two causes of action affected all the defendants. All that is necessary here is that both causes of action "affected" the two defendants who were found liable by the verdict, and who prosecute this appeal. Two questions arise therefore on this branch of the case: Were the two causes of action included in "the same transaction, or transactions connected with the same subject of action?" Do they affect both of the defendants?

It is probably correct that the two causes of action do not arise out of the same transaction, as they arise out of different prosecutions. There were then two "transactions," the first being the act of defendants in prosecuting plaintiff for blowing out the boom, the second, the act of defendants in prosecuting him for blowing out the pier. We say this without amplification of the subject, and recognizing the various definitions of the word "transaction" as used in this and similar statutes. The difficult question is whether these two transactions were "connected with the same *subject of action.*" What was the "subject of action" in the present case? The statute says that two or more consistent causes of action, "whether legal or equitable" may be united in one pleading under the conditions named; in view of the use of the words "whether legal or equitable," we are unable to adopt the suggestion of Mr. Pomeroy

(Pomeroy, Code Remedies, § 369) that the clause of the statute as to "transactions connected with the subject of action" probably applies exclusively to equitable suits. It is doubtless true that this clause will find its most frequent application in equitable actions, as pointed out by Mr. Pomeroy and in McArthur v. Moffett, 143 Wis. 564, 128 N. W. 445, 33 L.R.A. (N.S.) 264; and it is also clear that in equitable actions it is generally easier to say what is the "subject of action." We must hold that the clause applies to all actions.

In cases involving specific real or personal property, it is not difficult to determine what the "subject of action" is, as distinguished from the "cause of action." Generally speaking it is the property itself, or rather the property and plaintiff's right or title thereto. McArthur v. Moffett, supra. In tort actions, it is the property or right of plaintiff for the injury for which he seeks redress. While the matter is confusing, we think the "subject of action" in the case at bar may be said to be the right plaintiff possessed to freedom from malicious prosecutions, his right to an unblemished reputation, uninjured feelings and the other rights invaded by such prosecutions. The meaning of this clause has been the subject of a great amount of discussion, and we feel unable to add anything that would be clarifying. In the Wisconsin case referred to the opinion of Chief Justice Winslow is exhaustive. The cases in this state do not decide the precise point here involved, but they are useful. See cases cited in note to the statute, G. S. 1913, § 7780, subd. 1; 2 Dunnell, Minn. Dig. § 7500, and cases cited. In Montgomery v. McEwen, 7 Minn. 276 (351), it was said that the language was intended to allow the plaintiff to litigate everything arising out of the same transaction, or transactions connected with the same subject of action, in one suit. The decisions since have uniformly construed the statute liberally, with the idea of avoiding a multiplicity of suits. We think that the two causes of action in the case, if not a part of the same transaction, arose out of transactions connected with the subject of action, the rights of plaintiff that were invaded by the prosecutions. The authorities support this conclusion. 23 Cyc. 409, et seq., and cases cited.

The statute requires that the two or more causes of action must

"affect all parties to the action." It is not, however, necessary that they affect all the parties equally. As said by the present Chief Justice in Venner v. Great Northern Ry. Co. 117 Minn. 447, 136 N. W. 271: "One general right is demanded and it is not fatal that defendants are in a measure separately or independently involved." In Pleins v. Wachenheimer, 108 Minn. 342, 122 N. W. 166, 133 Am. St. 451, it was said: "The relief awarded in such cases may affect them differently; but, when all are concerned in some material part of the subject-matter in litigation, they may be joined." We hold that under the allegations of the complaint in the case at bar the two causes of action affect both of the appealing defendants. There was no misjoinder of causes of action and the demurrers were properly overruled.

2. At the close of plaintiff's case and again at the close of all the testimony defendant lumber company moved to dismiss as to the first cause of action and as to the second cause of action, and defendant railway company made like motions. Insofar as the claim of error in the denial of these motions is based upon the general contentions that there was probable cause for instituting the prosecutions, and that there was no malice, these questions will be taken up later. As to the claim that the lumber company was not responsible for the act of McDonald, or the railway company for the act of Horr, we will simply say that the evidence is ample to show that these men were acting for their respective corporations, within the scope of their duties, and that their acts are the acts of the defendants. It is urged that in any case the railway company was not responsible for the first prosecution, or the lumber company for the second. We do not sustain this view. McDonald was superintendent of the lumber company, and a director in the railway company, while Horr was secretary of the lumber company, a director in the railway company, and a stockholder of both companies. While McDonald signed the complaint in the first case and Horr in the second, they both participated in the arrest of plaintiff under each warrant. The two corporations were controlled by the same people, and their interest in preserving intact the obstructions made by the booms in the Rainy river and the piers in the Big Fork were

the same. The two acts of plaintiff and Bartlett were part of the same scheme, done on the same day, and were directed against the interests that, in the opinion of their employers, were obstructing the passage of logs down the Big Fork and Rainy rivers to the mills below. We are unable to say that the lumber company was not instrumental in instituting the prosecution for blowing out the pier above the bridge, or that the railway company had nothing to do with the prosecution for blowing out the booms.

3. This brings us to the merits. The first question here is whether there was probable cause for believing plaintiff guilty of a crime in dynamiting the pocket boom at the mouth of the Rainy river. There is no fair doubt that he and Bartlett actually did the act, but was it a criminal act, or did defendants have probable cause for so believing?

Of course if plaintiff was actually guilty, that is a complete defense to an action for malicious prosecution. This is elementary, as is also the proposition that, even if not guilty, probable cause to believe him guilty is a good defense. The law of probable cause and malice in these cases has been so often stated by this court, and so recently, that it would be useless repetition to again state it. Hanowitz v. Great Northern Ry. Co. 122 Minn. 241, 142 N. W. 196; Lammers v. Mason, 123 Minn. 204, 143 N. W. 359; Cox v. Lauritsen, 126 Minn. 128, 147 N. W. 1093. In this particular case the inquiry is really as to the guilt or innocence of plaintiff, as, if he committed no crime, there can hardly be a question on the evidence that McDonald and Horr had no reason to believe that he did. They knew the obstructions that existed at the mouth of the Big Fork and above the bridge. McDonald knew well that the Shevlin interests were engaged in a drive of the Big Fork, and that they claimed that the booms and piers in the river obstructed the drive. It is quite clear that he anticipated trouble. We have referred to the testimony that on the day before the boom was blown out McDonald begged the superintendent of the drive not to blow out the boom and promised to do something to give relief. It is also in evidence that the center pier above the bridge had been blown out in a prior year, that its existence in the river had been a bone

of contention between the Shevlin and Backus interests, and that Mr. Backus had promised to permit the free passage of logs down the Big Fork, but instead, that the pier had been replaced.

The question therefore on this branch of the case is whether plaintiff violated any criminal statute when he assisted in blowing out the boom or the pier. According to the complaint and warrant upon which plaintiff and Bartlett were arrested for blowing out the boom, the crime charged was that they did "wilfully, wrongfully and maliciously destroy and injure a boom in the Rainy river forming the boundary of said state and the Province of Ontario, which boom was placed there by authority of law, and was then and there the property of the * * * Watrous Island Boom Company * * * contrary to the form of the statute in such case made and provided." In the minutes of the committing magistrate, this is called the crime of "malicious mischief," but we think it is immaterial whether the prosecution was under G. S. 1913, § 8932, making it a felony to "wilfully or maliciously displace, remove, injure or destroy any pier, boom or dam *lawfully erected or maintained* upon, in or across any water within the state or any stream forming a boundary thereof," or whether it was under G. S. 1913, § 5479, which makes it a felony to wilfully and maliciously break or otherwise destroy or injure any boom, *unless such boom materially obstructs the navigation* of any navigable stream. Whether or not the Watrous Island Co. had legal authority to maintain booms and sorting works in the Rainy river, and the record does not show such authority, it seems plain that they had no right to unreasonably obstruct the passage of logs of other owners down the Big Fork river. Page v. Mille Lacs Lumber Co. 53 Minn. 492, 55 N. W. 608, 1119. Defendants were not driving the Big Fork, and there seems no legal warrant or excuse for their interference with the drive of the rival interests. Conceding that the booms and works were rightfully in the Rainy river, through the authority of the Secretary of War, the Department of Public Works of the Dominion of Canada, and the International Joint Commission, facts which do not appear, the necessity for defendant's purposes of the boom and boom sticks across the mouth of the Big Fork is not apparent, while the hindrance

to the free passage of the logs of other owners is clear. If defendants had any right in the river so oppressive to others, and so unusual, it was their duty to show it. Not only did the evidence abundantly justify the jury in finding that the boom destroyed by plaintiff "materially obstructed the navigation of a navigable stream," but it justifies us in saying that defendants had no right to obstruct the stream. It follows that plaintiff did not violate G. S. 1913, § 8932, because the boom he destroyed materially obstructed the navigation of the Big Fork and Rainy rivers, and that he did not violate section 5479, because the boom, being an unauthorized obstruction to navigation, was not lawfully maintained.

This is equally true as to the pier above the bridge. The jury was justified in finding that an obstruction to navigation. Defendants had no right to maintain it there. It follows that plaintiff committed no crime when he and Bartlett removed these obstructions to the drive they were making. As before stated, this is equivalent under the facts here to saying that there was not probable cause for prosecuting them on either charge, as McDonald and Horr knew the facts and must be presumed to have known the law. The trial court left the question of probable cause to the jury, under instructions that were eminently correct and fair. This certainly was not error prejudicial to defendants. Considering the evidence as if heard in this court, we have no hestitation in saying that the determination below was correct.

It can make no difference on this issue that the complaint of McDonald was against John Doe and Richard Roe. The bearing of this fact on the question of malice will be noted later, but it is not important on the question of probable cause when the evidence shows, as we think it does, that McDonald had no probable cause to believe that a crime had been committed by anybody. Boyd v. Mendenhall, 53 Minn. 274, 55 N. W. 45.

The rights to maintain booms and sorting works in Rainy river have been involved in several cases in this court. International Boom Co. v. Rainy Lake River Boom Corp. 97 Minn. 513, 107 N. W. 735; Id. 104 Minn. 152, 116 N. W. 221; Id. 112 Minn. 104, 127 N. W. 382; Namakan Lumber Co. v. Rainy Lake R. B. Corp. 115

Minn. 296, 132 N. W. 259.   See also Minnesota Canal & Power Co.
v. Koochiching Co. 97 Minn. 429, 107 N. W. 405, 5 L.R.A.(N.S.)
638, 7 Ann. Cas. 1182; Minnesota, C. & P. Co. v. Pratt, 101 Minn.
197, 112 N. W. 395, 11 L.R.A.(N.S.) 105; Minnesota, C. & P. Co.
v. Fall Lake Boom Co. 127 Minn. 23, 148 N. W. 561.

4. Whether there was malice in instituting the prosecutions was,
we think, a question for the jury.   In the first place they were
at liberty to find malice from want of probable cause.   In addition
to this, there is ample evidence to justify a finding that McDonald
and Horr were concerned only with maintaining the obstructions in
the river, and had no thought of the rights of others.   The facts
attending the two arrests, the injunctions, the circumstances sur-
rounding the commitment of the prisoners, the second arrest made
after plaintiff had been released on bail on a charge known to
defendants before, are items bearing on the question of good faith
or malice.   We have alluded before to the evidence that McDonald
directed the sheriff to arrest plaintiff and Bartlett under the John
Doe warrant.   This is denied, but the jury was justified in believing
it.   This evidence destroys the force of the claim that McDonald,
because he did not know who had committed the act, cannot be
charged with malice.

5. The defense of advice of counsel applies only to the second
cause of action.   We do not notice the claim of plaintiff that the
lawyer who gave the advice had not been admitted to practice in
this state, further than to say that we assume that this defense may
be good when the counsel, as in this case, is an attorney in good
standing in another state.   But this issue was carefully submitted to
the jury and the decision was that this defense had not been made
out.   The evidence of a full good-faith statement of the facts to the
attorney was not conclusive, as it seldom is in these cases.   We
must hold that it sustains the verdict.

6. We have concluded that the amount of the verdict is not so
plainly excessive as to warrant our interference.   It is rather diffi-
cult for us to see any great actual damages to plaintiff from these
prosecutions.   But in this kind of an action it is rare that the
compensatory damages can be measured with any accuracy.   Plain-

130 M.—16.

tiff's reputation may have suffered more than we think, and the degradation may have been injurious to his standing in the community and to his feelings. For the first prosecution the jury awarded $750 as compensatory damages, and $500 as exemplary damages. They gave $2,000 on the second cause of action. The rule announced in Chapman v. Dodd, 10 Minn. 277 (350), is the law to-day in these cases: "The jury are the proper judges of the amount of damages to be allowed in actions of this kind, and unless there is something in the case showing that the jury in their determination were influenced by passion, prejudice or some improper motive, the court will not interfere to disturb the verdict." The trial court approved the amount and we decline to interfere.

7. We have examined carefully the alleged errors in the rulings on evidence, in the charge, and in the refusal to give requested instructions. We find nothing to warrant a reversal. The rulings on the admission of evidence were correct, or at least not prejudicial, the charge given clearly and correctly covered the issues in the case, and gave either in the words of the requests or in substance all of the instructions asked by defendants that were good law.

8. The claim of misconduct of counsel was not made in the motion for a new trial, and cannot be urged here. Pink v. Metropolitan Milk Co. 129 Minn. 353, 152 N. W. 725.

The order and judgment appealed from are affirmed.