## MARY DOMBROVSKE v. PETER DOMBROVSKE.[1]

May 25, 1917.

Nos. 20,223—(53).

**Malicious prosecution — probable cause — question for jury.**

1. In an action for malicious prosecution the question as to whether probable cause existed for the prosecution is for the court; but this rule is not absolute and, where the evidence is conflicting or different inferences may be drawn from it, the question may properly be submitted to the jury. It was properly submitted to the jury in this case.

[1] Reported in 162 N. W. 891.

**Same — when advice of counsel is a defense — question for jury.**

2. To relieve one who institutes a criminal prosecution from liability therefor on the ground that he acted on the advice of counsel, or on the ground that he merely presented the facts to a magistrate who exercised his own judgment in causing the arrest, it must appear that he fully and fairly disclosed to them all the material facts known to him, and whether he has done so is ordinarily a question for the jury.

**Questions for jury.**

3. The several questions presented were properly submitted to the jury and no prejudicial errors appear.

Action in the district court for Stearns county to recover $5,030 for malicious prosecution. The case was tried before Roeser, J., and a jury which returned a verdict in favor of plaintiff for $300. Defendant's motion for judgment notwithstanding the verdict was denied, and his motion for a new trial was denied, provided plaintiff consented to a reduction of the verdict to $200. From the order denying his motion for a new trial, defendant appealed. Affirmed.

*Paul Ahles,* for appellant.

*R. B. Brower,* for respondent.

TAYLOR, C.

This is an action for malicious prosecution in which plaintiff had a verdict and defendant appeals from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

Defendant had caused plaintiff to be arrested on a charge of grand larceny, and the principal question upon this appeal is whether he had probable cause to believe that she was guilty of the offense charged. Defendant and Martin Dombrovske are brothers. At the time of the occurrences in controversy their mother lived with defendant upon his farm about 15 miles from the city of St. Cloud and about 6 miles beyond the village of St. Joseph. She was 88 years of age and her mental faculties had become much impaired. She had certificates of deposit amounting to $4,300 and about $1,000 in money which she kept in her own possession and was in the habit of secreting in various unusual places. Martin lived in the city of St. Cloud and plaintiff is his wife. The record indicates that each family was suspicious that the other

would contrive to get some of the mother's money. They finally agreed to have John C. Crever, president of the bank in the village of St. Joseph and a nephew of defendant's wife, appointed guardian of the mother, and this appointment was made on July 6, 1915.

The two brothers and their wives were present at the hearing in probate court at which this appointment was made, but the mother remained at defendant's home. When the hearing was concluded Martin and plaintiff took an automobile and went to the bank at St. Joseph, where they informed Crever that he had been appointed guardian, and that they were on their way to get the mother's money and papers and bring them to him. Crever informed them that he could not act as guardian until after he had qualified as such, which he would do some days later. They however proceeded to defendant's house, procured the certificates of deposit and $565 in currency from the mother, and returned to the bank where they delivered the certificates and money to Crever. Crever handed the currency to the cashier of the bank and took a deposit slip for it in the name of the mother; he placed this slip with the certificates of deposit and put the package in the bank vault. The cashier was not informed of the certificates of deposit and did not know that they had been received by Crever or placed in the vault. Defendant who had gone to the hearing with a horse and buggy did not reach his home until after Martin and plaintiff had been there and gone away again. As he passed through St. Joseph, he requested Crever to come out to the house and get his mother's money and papers. This was before Martin and plaintiff had returned from their trip to the house. On reaching home defendant was informed by his children that Martin and plaintiff had been there and had taken and carried away the mother's money and papers. He drove back to the bank where he was informed by the cashier that Martin and plaintiff had been there and left $565 in currency and nothing else so far as the cashier knew, but was also informed by the cashier that the business had been done with Crever. Defendant, without any attempt to find Crever who was not then in the bank but lived across the street from it, returned home. He testifies that his mother was in such condition that he could obtain no information from her that evening; that the next morning she told him that Martin and plaintiff had taken all her money and deposit cer-

tificates and asked him to get them and bring them back; that he made a search of her room and found no money or certificates, and that he knew that the certificates and about $1,000 in money had been in her possession. He again went to the bank, but Mr. Crever was again absent, and the cashier could give him no additional information. From the bank he went to the office of the county attorney in St. Cloud, but, finding the county attorney out of the city, told his story to another attorney in an adjoining office who directed him to a city justice. He repeated his story to the city justice, and then made written complaints, charging both Martin and plaintiff with the theft of $1,000 from his mother. They were arrested, admitted to bail, and the hearing adjourned to a later date. Before the hearing Crever qualified as guardian and went to the house and found $390 in gold which the mother had secreted so well that neither Martin nor defendant had found it. When the county attorney learned that all the certificates of deposit had been immediately delivered to Crever and that this additional money had been found in the mother's possession, he dismissed the prosecution. This suit followed.

Defendant insists that the court erred in not holding that plaintiff had failed to prove want of probable cause for the arrest, instead of submitting that question to the jury. If defendant had reasonable grounds for believing that the money had been stolen, the evidence was sufficient to justify him in believing that plaintiff had taken part in stealing it. Defendant invokes the well-established rule that in such actions the duty rests upon the court to determine whether probable cause existed for making the arrest. This rule is not absolute, however. Where the facts are in doubt, it is the province of the jury to pass upon the weight of the evidence and determine what facts have been established by it. In such cases it is permissible practice for the court, instead or requiring the jury to report the specific facts which they find established by the evidence, to point out the state of facts essential to constitute probable cause in the particular case before the court, and the nonexistence of which will establish lack of such probable cause, and direct the jury to find the existence of probable cause in case they determine that such state of facts existed, and to find the absence of probable cause in case they determine that such state of facts did not exist. The

essential facts may be in doubt, either because the evidence is contradictory, or because it is not sufficiently certain and convincing to satisfy the court as to what facts have been established by it. To state the rule as frequently given in the cases—if the evidence is conflicting, or if different inferences may fairly be drawn from it, the question is for the jury. Lammers v. Mason, 123 Minn. 204, 143 N. W. 359; Petruschke v. Kamerer, 131 Minn. 320, 155 N. W. 205.

At the time of causing the arrest, defendant knew that Crever had been appointed guardian of his mother, because her mental faculties had become so impaired that she was no longer competent to manage her own affairs; that Martin and plaintiff distrusted him, while they had confidence in Crever; that as soon as the appointment was made they had gone to his mother at his house without his knowledge, and had taken money and certificates of deposit belonging to her, and gone from the house direct to Crever at his bank; that their transactions at the bank had been with Crever personally; that his mother complained that they had taken all her money and certificates, but was unable to give him a coherent account of what had taken place; that he had failed to find any money or certificates on searching her room; that she was in the habit of hiding both certificates and money where neither could be readily found; that $565 had been deposited in the bank, and that his mother ought to have had about $400 more than that. He did not know what amount of money Martin and plaintiff had found; nor what, if anything, they had given Crever in addition to the money deposited in the bank; nor what information Crever had concerning their acts and intentions. It is true that the conduct of Martin and plaintiff in going to defendant's house in his absence and without his knowledge, and taking what they could find of the mother's property and carrying it away, is reprehensible; but, in view of all the facts known to defendant, their conduct was compatible with an honest purpose and did not necessarily indicate a dishonest purpose. When the facts are undisputed and the inferences reasonably clear, the question of probable cause is for the court. But we cannot say that defendant, as a reasonably prudent man, knowing all the facts and circumstances disclosed by this record, was justified in assuming, without further investigation, that either Martin or plaintiff intended to steal the moth-

er's property. The evidence went no further than to make a question for the jury, and the case was properly submitted to them.

Defendant also claims that he is not liable, for the reason that he acted on the advice of counsel and of the magistrate. What advice was given him is not entirely clear. He states that the attorney did not advise him to have any one arrested, but told him it was a criminal case, and to present the matter to the magistrate. While the magistrate evidently took the position that there was cause for a prosecution, he hesitated to issue a warrant for plaintiff, but did so because defendant insisted upon it. Apparently defendant did not content himself with presenting the facts to the magistrate, but insisted that the arrest be made. However this may be, the protection which he invokes is only given to one who fully and fairly states all the facts known to him, and whether he has done so is ordinarily a question for the jury. Mundal v. Minneapolis & St. Louis R. Co. 92 Minn. 26, 99 N. W. 273, 100 N. W. 363. Two important facts known to defendant do not appear to have been communicated to either the attorney or the magistrate, namely: The fact that the transactions at the bank in respect to the property had been with Crever personally and not with the cashier to whom defendant had applied for information; and the fact that his mother was in the habit of hiding her valuables where they might not be found. We think that the several questions were properly submitted to the jury and find no prejudicial errors in the rulings of the court.

Order affirmed.