GEORGE H. MILLER v. AMERICAN NATIONAL BANK IN LITTLE FALLS AND ANOTHER.[1]

October 29, 1943.

No. 33,360.

[1]Reported in 11 N. W. (2d) 655.

20

*A. Gordon Rosenmeier* and *Charles A. Fortier,* for appellant.
*Swanson, Swanson & Swanson,* for respondent.

LORING, JUSTICE.

Action for malicious prosecution. Plaintiff was arrested upon a complaint signed by defendant bank and Clarence Taylor charging him with concealing and disposing of mortgaged personal property. A preliminary hearing was had before a justice of the peace and the charge dismissed. Thereafter the bank signed another complaint. Plaintiff had a preliminary hearing in the municipal court of Little Falls, was bound over to the district court, tried, and acquitted. He brought two actions in the district court for malicious prosecution against the bank and F. L. Hartmann, a bank officer, one based on each complaint. The cases were tried together. There was a verdict for defendants in the case based on the charge made before the justice. Plaintiff had a verdict against the bank alone in the case based on the proceeding initiated in municipal

court. The bank appeals from an order denying its motion for judgment notwithstanding the verdict or a new trial.

Clarence Taylor was the owner of certain livestock and farm machinery which was mortgaged to the bank to secure a $400 note. Mrs. H. J. Taylor obtained a judgment against Clarence and levied on his chattels, including the above mentioned mortgaged property. Through his lawyer, Clarence notified the bank (his mortgagee) that certain of the chattels were exempt and that, if it should foreclose, the bank must first exhaust the nonexempt property, upon which the levy had already been made, in satisfaction of its mortgage. The bank's mortgage was not then due. The exempt property was segregated from the nonexempt, and the execution sale of the latter, which consisted entirely of livestock, was held on November 20, 1940.

Before the sale, the deputy sheriff announced that the cattle were being sold "subject to a mortgage held by the American National Bank of Little Falls, Minnesota," as provided in the notice of levy and sale. The sale was delayed a few minutes pending the arrival of a Mr. Barton, one of the bank's officers. When he arrived he had some conversation with the deputy sheriff, the nature of which is in dispute. Plaintiff and his witnesses testified that Barton said they did not have to wait for him, that the bank was not worried, it had plenty of security. Barton, the deputy sheriff, and the attorney representing the judgment creditor at the sale all testified that nothing was said about the bank not being worried or that it had other security. Plaintiff purchased the cattle for $360.

Before paying for the cattle, plaintiff asked for a bill of sale. The deputy sheriff, being uncertain whether immediate possession of the cattle could be given, called Mr. Rosenmeier, the attorney for the bank, by telephone. He then gave plaintiff a memorandum to the effect that plaintiff was entitled to possession of the cattle. No bill of sale was given. At the same time plaintiff talked with Mr. Rosenmeier and at the latter's suggestion went to Little Falls. There he had a conference with Mr. Rosenmeier and the defendant Hartmann, an officer of the bank. Plaintiff testified that at this

conference he was informed that the bank was claiming a mortgage on the cattle he had bought, and it was suggested to him that he buy the bank's mortgage so that he would have a lien for at least part of the money he had put into the cattle. This he refused to do. All this took place on November 20, 1940, the same date as the sale. The next day was Thanksgiving Day, and early the morning of the 22d plaintiff took the cattle to the southern part of the state and sold them at an auction sale. This was done without notice or knowledge of the bank. It is plaintiff's present contention that he believed that Barton's statement and the surrender of possession of the cattle to him by the deputy sheriff constituted a release of the bank's lien, although on the preliminary hearing in justice court he testified: "That there was a possibility I might have to pay some of the mortgage on top of what I paid on the mortgage. [*sic*] I didn't disregard that in buying those cattle." The inconsistency is apparent.

Plaintiff consulted Austin L. Grimes, the county attorney, who, plaintiff testified, was of the opinion that plaintiff would be responsible only for the difference between the debt secured and the amount obtained on foreclosure of the exempt property still held by Clarence Taylor, the original debtor. Mr. Grimes testified that he told plaintiff that the cattle could only be sold with permission of the bank.

About two weeks after the sale, plaintiff had another meeting with Hartmann at the bank but did not disclose that he had sold the cattle. He then refused to pay the mortgage. Thereafter the bank commenced foreclosure proceedings and, not finding the cattle, on December 27, 1940, had plaintiff arrested for concealing and disposing of mortgaged property. The county attorney conducted the preliminary hearing in justice court, which resulted in the dismissal of the complaint. · In the malicious prosecution action based on this complaint the jury found for defendants, and we need not consider it further except as it served to disclose the facts relative to the sale and the contentions of the parties.

The prosecution under consideration was commenced by a com-

plaint signed by the bank on March 26, 1941. The county attorney testified that after the first preliminary hearing before the justice he was of the opinion that there was probable cause and that the "evidence taken at that hearing would conclusively establish in my mind a criminal cause of action for concealing mortgaged property so far as the jurisdiction of Morrison county was concerned." He also testified that if the bank wanted to sign another complaint he would issue it. The county attorney and the bank's attorney, Rosenmeier, conferred several times concerning the second prosecution and, as Rosenmeier was not at the preliminary hearing, the bank ordered a transcript of the testimony in justice court, which Rosenmeier examined before advising the bank. It was upon his advice that the complaint was signed.

■ It is a well established rule in this state that where a person states fully and fairly to an attorney all the facts known to him and is advised that such facts warrant a criminal prosecution, and, acting in good faith in reliance on such advice, he institutes a prosecution, he has a complete defense to an action for malicious prosecution. Youmans v. Berkner, 167 Minn. 67, 208 N. W. 530; Jones v. Flaherty, 139 Minn. 97, 165 N. W. 963; Moore v. N. P. R. Co. 37 Minn. 147, 33 N. W. 334; Dombrovske v. Dombrovske, 137 Minn. 56, 162 N. W. 891. This is the general rule in other jurisdictions. See cases collected in annotation in 18 L.R.A.(N.S.) 50, note II.

■ Plaintiff does not question the rule but contends that whether or not the bank made a full and fair disclosure to its attorney was a question for the jury. The trial court so submitted it. Plaintiff contends that the bank did not tell Rosenmeier of plaintiff's version of the statement made by Barton at the sale. Rosenmeier was familiar with this transaction from the beginning. On the day of the sale the deputy sheriff in charge of the sale called Rosenmeier to inquire about the purchaser's right to possession of the property. And on the same day, at Rosenmeier's request, plaintiff went to Little Falls and conferred with Rosenmeier at the bank in the presence of Hartmann with reference to the bank's mortgage upon

the cattle. The evidence is conclusive that at the preliminary hearing before the justice plaintiff gave his version of Barton's statement at the sale. Before Rosenmeier would advise the bank as to the propriety of filing a criminal complaint against plaintiff he required the bank to obtain a transcript of the testimony which had been given at the preliminary hearing. He examined this transcript, in which plaintiff's version of Barton's statement was disclosed, and this examination was made before he advised the bank in response to its request, so it is clear that the bank disclosed to Rosenmeier not only all the facts that it knew about the situation, but also, by furnishing the transcript, disclosed to him plaintiff's version of the transaction.

■ It is not important whether Rosenmeier got all the facts from the bank or from other sources. In Brown v. Smith, 83 Ill. 291, it was held that the defendant in a malicious prosecution was not precluded from setting up the defense of advice of counsel on the ground of failure to disclose facts where counsel knew the facts from other sources. Youmans v. Berkner, *supra*. In the case at bar we regard the evidence as conclusive that the bank itself furnished the facts to Rosenmeier by furnishing him with a transcript of the evidence at the preliminary hearing. That the bank acted in reliance on Rosenmeier's advice is uncontradicted.

■ The fact that Rosenmeier was regularly retained by the bank did not preclude it from seeking his advice and asserting reliance on such advice as a defense to an action for malicious prosecution. Shea v. Cloquet Lbr. Co. 92 Minn. 348, 352, 100 N. W. 111, 112, 1 Ann. Cas. 930; Berger v. Wild (3 Cir.) 66 C. C. A. 79, 130 F. 882; Fletcher v. C. & N. W. Ry. Co. 109 Mich. 363, 67 N. W. 330; Kansas & Texas Coal Co. v. Galloway, 71 Ark. 351, 362, 74 S. W. 521, 526, 100 A. S. R. 79, 89. The court in the last named case said:

"* * * The objection that he was interested as the attorney of the prosecutor, and therefore disqualified under the rule, is untenable, for any lawyer called upon to advise is the attorney for the party asking his advice."

█ In addition to Rosenmeier's advice, the bank had the advantage of the advice of the county attorney, who had attended the preliminary hearing and whose associate had attended the sale. The county attorney gave his opinion that the testimony of the plaintiff himself at the preliminary hearing showed conclusively that he had committed a criminal offense in concealing mortgaged property. He communicated his opinion to the bank's attorney and drew the criminal complaint for the bank's signature. The defense of advice of counsel was fortified by the fact that the proceeding was instituted upon the advice and with the approval of the prosecuting officer of the state, who had firsthand knowledge of the facts. As said by the trial court with the approval of this court, in Youmans v. Berkner, 167 Minn. 71, 208 N. W. 531, *supra*, "between Berkner and blame in this case stands not only the direction of his own counsel but the action of the state's attorney and the grand jury." Moore v. N. P. R. Co. 37 Minn. 147, 33 N. W. 334; Gilbertson v. Fuller, 40 Minn. 413, 42 N. W. 203; Genevey v. Edwards, 55 Minn. 88, 56 N. W. 578. In this case the prosecuting officer had firsthand knowledge of plaintiff's version of Barton's statement at the sale, because he conducted the preliminary hearing at which plaintiff testified to that version.

The order appealed from is reversed with directions that judgment be entered for appellant.

YOUNGDAHL, JUSTICE (dissenting).

I dissent. Plaintiff is entitled to the benefit of the rule that on appeal the testimony must be considered most favorably to him. The majority opinion does not give him the benefit of this rule, in my opinion, but views the testimony most favorably to the bank.

On the first charge against plaintiff, the bank was given the benefit of good-faith reliance on counsel's advice by the jury's verdict in its favor; but after the justice had discharged the bank, on the ground that the evidence was insufficient to sustain the charge against plaintiff, it seems to me that it was well within the realm of fact for the jury to determine whether in going ahead with the second prosecution the bank acted in good faith in reliance upon

26

counsel's advice. Certainly, after its discharge by the justice it should have been put on guard as far as further criminal prosecution was concerned. It was for the jury to say whether the refusal of the examining tribunal to hold plaintiff over to the district court for trial should have created such doubt on the question whether there was sufficient ground for the prosecution against him by the bank that in proceeding with the second arrest there was a lack of faith on the part of the bank. It could not go blindly ahead in its zealous desire to collect a mortgage debt and hide under the cloak of protection afforded by the theory of reliance upon advice of counsel. As a matter of fact, good faith was required of the bank as to the second prosecution even after securing counsel's advice. Not even legal advice will protect a party if it is used only as a cover and is not acted on in good faith, or if it did not induce an honest belief that a cause of action existed or a crime had been committed. Good faith in acting upon the advice of counsel is necessary to protect a party, and whether he did so is a question for the jury. Cole v. Curtis, 16 Minn. 161 (182). Since then we have repeatedly held that such issue is one of fact for the jury. 4 Dunnell, Dig. & Supp. § 5744, and cases cited. In Price v. M. D. & W. Ry. Co. 130 Minn. 229, 241, 153 N. W. 532, 536, Ann. Cas. 1916C, 267, this court held that the defense of advice of counsel was properly for the jury to determine, and the court stated: "The evidence of a full good-faith statement of the facts to the attorney was not conclusive, *as it seldom is in these cases.*" (Italics supplied.)

It seems to me that when we have a situation such as that in the instant case, where a defendant (the plaintiff here) was discharged by a magistrate on the ground of insufficiency of evidence and then a second prosecution was instituted against him, we are invading the province of the jury in holding as a matter of law that in instituting the second case the bank in good faith relied on counsel's advice. Especially is this true in view of the conflicting nature of the factual picture presented by the record. In granting judg-

ment for the bank I believe that we are encroaching upon the prerogative of the trier of fact.

PETERSON, JUSTICE (dissenting).
I concur in the dissent.

THOMAS GALLAGHER, JUSTICE (dissenting).
I concur in the dissent.