[1] Reported in 277 N.W. 529.
The appeal is from a judgment which has for its foundation the following facts: Clara Peterson, a resident of Wright county, died testate September 21, 1934. Born in Sweden, she came to this country when 13 years of age. Her education was meager, her lifetime occupation being mainly devoted to housework, of which some 25 years were spent with one family. She was a spinster, 74 years of age at time of death.
By industry and thrift she managed to accumulate an estate inventoried at $24,505.82, more than $20,000 of which was in cash, mortgages, bonds, etc. The real estate consists of a modest home in Cokato, and a 40-acre tract of farm land near there. The appraised value of all the real estate is $3,500 and that of furniture and household goods only $300. On March 17, 1933, she made her will, which was, on April 6, 1935, duly admitted to probate without *Page 33 
contest. Under the terms thereof she gave modest sums to her relatives, appellants amongst them, but devoted much the greater part thereof to religious, charitable, educational, and other activities of mercy and charity, all having to do with what is generally regarded as tending to the accomplishment of bettering humanity spiritually and morally. All of the activities to which the benevolence of testatrix was directed have some connection with the people of her native country or their descendants. The issues involved arise by virtue of the residuary clause of the will (art. 15), which reads as follows:
"All the rest, residue and remainder of my estate of whatever nature and wheresoever situate, I give, devise and bequeath to the Bethesda Deaconess Home in St. Paul; the Bethesda Home forthe Aged at Chisago City; and the Vasa Orphans Home, share and share alike." (Italics supplied.)
Such proceedings were duly had in and by the probate court that all debts, expenses of administration, and specific bequests were fully paid, leaving available for immediate distribution under the quoted article $10,000 in cash. To accomplish that purpose, the executor petitioned the court for a decree of partial distribution. At the hearing thereon appellants Ellen Swenson, a sister, and Albert T., Fred D., and Helen Hartford, children of a deceased brother, appeared, claiming the right to take the entire remainder of the estate for reasons which will be discussed later. But it is appropriate to mention here that Richard M. Peterson, the only son and heir of another deceased brother of testatrix, and the executor of the will, has acquiesced in the result reached by the probate court and the district court as well, to which the other heirs, appellants here, appealed. It will thus be seen that only as to two-thirds of the residue is there any real contest; that is to say, the surviving sister and the Hartford children are the only ones who complain of the result reached below.
Hereafter we shall refer to appellants as thus limited. For them it is claimed: (1) That the beneficiaries named in the residuary clause of the will "are not corporations or unincorporated associations *Page 34 
or societies" and that as such "they have no capacity to take the bequests"; hence that the residuary clause is void in its entirety and that the residue of decedent's estate descended to decedent's heirs at law under the intestacy law; (2) that the "Bethesda Deaconess Home in St. Paul" had been discontinued and abandoned "as a Conference activity" before the will was made, hence that "the bequest to it is void also for that reason"; (3) "that the residuary clause is also void as a devise of real estate."
Respondents do not contest appellants' claim that "if the residuary clause is void as to any property or any gift, such property or gift, or both, pass to the heirs at law as intestate property." We may therefore safely pass to the first point made, namely, that the beneficiaries named are not entities, corporate or otherwise, and as such have no capacity to take the property.
1. We may grant the claimed legal incapacity of the named beneficiaries to take property, but that does not necessarily destroy the gift under the facts here appearing. In this connection it is deemed expedient to state certain other facts not heretofore recited: The Evangelical Lutheran Augustana Synod of North America (hereinafter referred to as Synod) is an unincorporated church organization existing throughout this country and parts of Canada. It has territorial subdivisions referred to as "Conferences" consisting of congregations, which in turn are composed of people of Swedish birth or extraction who adhere to the doctrines of the Synod.
The Board of Christian Service (hereinafter referred to as the Board) is a Minnesota corporation and is a subsidiary of the Lutheran Minnesota Conference, also a duly incorporated entity under our laws. The Board as a corporate entity was organized and established to operate for the advancement of "religious, moral, educational or benevolent purposes." As such it owned and operated, and still so continues to own and operate, amongst many other activities, an old people's home at Chisago City, known as "Bethesda Old People's Home," and a children's home known as "The Vasa Children's Home," formerly located near Vasa but now located between Vasa and Red Wing, in Goodhue county. The funds, property, *Page 35 
and accounts of each of said institutions so under the control of the Board are kept separate and distinct, and strictly applied to the uses and benefits of the respective activities for which gifts or bequests are made. There is not, nor has there ever been, another home for the aged at Chisago City than the said Bethesda Old People's Home. The same is true respecting the Vasa Children's Home.
Prior to October, 1930, the Board also owned and operated the Bethesda Deaconess Home in St. Paul. The objects and purposes of that activity were to train and educate deaconesses to enable them to "go forth to do all kinds of work of mercy and charity."
Respondent The Immanuel Deaconess Institute (hereinafter referred to as the Institute) is a Nebraska corporation organized in 1904 by the Synod. It owns and operates a deaconess home at Omaha. The purposes, rules, and regulations of the Institute are identical with those of the Deaconess Home in St. Paul. There were but seven deaconesses attached to the St. Paul home when in October, 1930, the Board and the Institute entered into an affiliation or merger agreement. In accordance therewith, the deaconesses in the Minnesota home were transferred to the Omaha home. It was agreed between the Board and the Institute that the former should pay to the latter a proportion of the appropriation which would be set aside for the work of the deaconesses in Minnesota for 1930 and 1931. In return, the Institute guaranteed to and did furnish the services of at least six deaconesses to the Minnesota Conference. As a matter of fact, six of the seven deaconesses then in the Minnesota home remained in the same service under the Minnesota Conference. The seventh was then and continued to remain in the foreign service field in China.
There is no suggestion of lack of corporate authority to effectuate the affiliation or merger of the two activities. The corporate parties entering into the agreement were in law capable of contracting, each being a corporate body. The record abundantly establishes that the activity of the St. Paul home is and hereafter will be adequately performed by the Institute in full compliance with the merger. And this was safeguarded by the court in its decree of *Page 36 
distribution where it is expressly provided that the one-third given by the will to the St. Paul home was to be "used for the benefit of the deaconesses that were affiliated" therewith at the time of merger, "and for continuing and carrying on the work and activities formerly carried on" by the Board "by and through its Bethesda Deaconess Home."
We find no difficulty in holding, as did both courts below, that misnomer of the beneficiaries is not fatal. The "Bethesda Home for the Aged" is really the "Bethesda Old People's Home"; the "Vasa Orphans Home" is really "The Vasa Children's Home." In such circumstances, "extrinsic evidence or parol testimony may be received to disclose a latent ambiguity as to the identity of a legatee or beneficiary in a will, and the same sort of evidence is admissible to remove the ambiguity disclosed. The ambiguity may arise where the will names a legatee not in existence, or where there is a misnomer of the one named." Henrikson v. Swedish Baptist Mission Society,163 Minn. 176, 203 N.W. 778. In re Estate of Lundquist, 193 Minn. 474,259 N.W. 9. The evidence adduced below is ample to establish their true identity.
2. The involved residuary clause clearly indicates that testatrix' mind was firmly set on leaving the major part of her estate to these charitable activities. In form these are direct gifts to named beneficiaries, each of which is a charitable activity, an institution established and functioning solely for such purposes. In consequence, we hold, in line with many courts, that a devise or bequest, although in form an outright gift, yet when made to an institution whose sole reason for existence and whose entire activity is charitable, is in purpose and practical effect a charitable trust. In such cases the recipient (here the Board of Christian Service), a legal entity organized and existing for the purpose of administering the named charities, takes, not beneficially, but as trustee, to use the funds in furtherance of these charitable purposes. That was the holding by the courts below, and we should not interfere unless there are legal obstacles preventing that result.
Each appellant was provided for in the will, thus indicating an intent to limit the gift to the amount therein specified. The residue *Page 37 
is to be divided amongst the three benevolent institutions therein named. Cases are not wanting in support of what has been said. See Bowman v. The Domestic and Foreign Missionary Society, 182 N.Y. 494, 75 N.E. 535; Hubbard v. Worcester Art Museum, 194 Mass. 280, 80 N.E. 490, 9 L.R.A.(N.S.) 689,10 Ann. Cas. 1025; Rhode Island Hospital Trust Co. v. Williams,50 R.I. 385, 148 A. 189, 74 A.L.R. 664.
3. To carry out the intention of testatrix is the "one controlling factor. It is the trail which the courts must follow in all its turns and windings, through swamps and over hills, provided only that it has been sufficiently blazed and does not trespass on forbidden territory." Zollmann, Am. Law of Charities, p. 93, § 140. As has been seen, the general purpose and intent of testatrix is clearly apparent, hence her directions "must be adhered to as rigidly by the courts" as by trustees. Id. p. 92, § 139. It was therefore proper to determine, as was done below, that the substitution of respondents as recipient trustees is correct. Since the enactment of 2 Mason Minn. St. 1927, §§ 8090-1 to 8090-4, charitable trusts can be created in this state. Section 8090-3 thereof provides:
"Whenever it shall appear to the district court of the proper county that the purpose and object of such charity is imperfectly expressed, or the method of administration is incomplete or imperfect, or that the circumstances have so changed since the execution of the instrument creating the trust as to render impracticable, inexpedient, or impossible a literal compliance with the terms of such instrument, such court may * * * make an order directing that said trust shall be administered or expended in such manner as in the judgment of said court will, as nearly as can be, accomplished [sic] the general purposes of the instrument and the object and intention of the donor without regard to, and free from any, specific restriction, limitation or direction contained therein, * * *"
That is legislative recognition of the historical doctrine of judicial cy pres. Under it the court is authorized to approximate the intention of the donor when his exact intention cannot be carried *Page 38 
out for some reason. See In re Estate of Lundquist, 193 Minn. 474,259 N.W. 9.
That doctrine presupposes the existence of a valid gift, a trustee indicated in some manner, a definable charitable use or object, and a general charitable intent, Zollmann, Am. Law of Charities, §§ 123-125, "and the particular mode prescribed for its administration has become illegal, inadequate, or inappropriate." Id. p. 76, § 123. The typical case for its application, where a general intent is displayed, is where the particular charitable use or object cannot be accomplished. Jackson v. Phillips, 96 Mass. 539, a leading American case, is an example. Testator there bequeathed to trustees money to be used to "create a public sentiment that will put an end to negro slavery in this country." (Id. p. 541.) Thereafter slavery was abolished by the 13th amendment. The funds were nevertheless applied cy pres to the "use of necessitous persons of African descent in the city of Boston and its vicinity." (Id. p. 597.) The other kind of case pertains to impossibility of administration by the named donee although the purposes themselves can be executed, for example, where the donee cannot take or later ceases to exist. Zollmann, Am. Law of Charities, §§ 145-146. But if a general charitable intent, as distinguished from a special one, can be spelled out, cy pres
will be applied to effectuate the intent. Minot v. Baker,147 Mass. 348, 17 N.E. 839, 9 A.S.R. 713; Mason v. Bloomington Library Assn. 237 Ill. 442, 86 N.E. 1044, 15 Ann. Cas. 603.; 14 Minn. L.Rev. 601.
The requisites for application of cy pres are here present. Testatrix' intent is abundantly manifested by the will in general and the residuary clause in particular. We find nothing that would justify a conclusion that testatrix specifically intended administration by the donees themselves. She was a member of the Cokato congregation of the church. Naturally she was interested in the worthwhile activities carried on by the named beneficiaries. The fact that she named these charitable institutions without ascertaining whether or not they could legally take her gifts disposes us to conclude that each of these gifts was in no wise conditioned upon legal capacity to take by the particular donee but rather that the *Page 39 
furtherance of each one's existing work was her only object. As long as that manifestly appears, the court, under cy pres, can and should effectuate that intent.
The purposes of the three named institutions are still being carried out — those of the Bethesda Old People's Home and The Vasa Children's Home, as originally, under the control and direction of respondent, The Board of Christian Service; those of the Bethesda Deaconess Home under the control of The Immanuel Deaconess Institute. Respondents are existing, active entities, each ready, able, and willing to receive the property and subject it to the purposes intended. In fact, they may be called the real legatees. (See Henrikson v. Swedish Baptist Mission Society, 163 Minn. 176, 203 N.W. 778.) It is through these agencies that the respective respondents accomplish their charitable work. That circumstance buttresses the conclusion we have reached.
4. The only matter submitted to and determined by the probate court was the distribution of $10,000. On appeal, the district court, because "appellants and respondents have all joined in the request that the question of the validity of the said residuary clause as a devise of real estate be also adjudicated in this proceeding," assumed to so adjudicate. In its order on this phase the court said: "the balance of the residue of the said estate, both real and personal property, when distributed, shall be distributed to the same corporation in the same proportions, in the same manner and for the same purpose as hereinabove ordered as to the distribution of the ten thousand ($10,000) dollars now available for distribution."
We also are urged to pass upon this issue to the end that further litigation thereby may be avoided. The invitation must be declined, not because we desire to avoid responsibility but because we lack authority to act.
Under our constitution, the probate court has exclusive jurisdiction over the estates of deceased persons and those under guardianship (Const. art. 6, § 7). This includes not only "every matter necessarily connected with the administration of estates," but also the "power and duty to determine to whom property passes by will or descends by inheritance." 5 Dunnell, Minn. Dig. (2 ed. *Page 40 
Supp. 1932) § 7771, and cases under notes 70, 72, and 75. With that court lies exclusive power and authority to "construe wills and determine the validity of their provisions for purposes of administration"; and "to determine the amount of distributive shares." Id. § 7778, and cases under notes 23 and 24; Id. § 7770c, and cases cited in notes; Id. § 7770d, and cases under note 66; State ex rel. Martin v. Ueland, 30 Minn. 277,15 N.W. 245; Appleby v. Watkins, 95 Minn. 455,104 N.W. 301, 5 Ann. Cas. 471. (There are cases when the district court, as a court possessed of general jurisdiction, may, as an incident to an action of which it has jurisdiction and in order to effectuate its judgment, construe a will admitted to probate though not construed by the probate court. See Melby v. Nelson,169 Minn. 273, 211 N.W. 465. But this obviously is not such a case. Nor is this case one where the district court might act in furtherance of justice as a court of ancillary jurisdiction. 5 Dunnell, Minn. Dig. [2 ed.] § 7770e.) The district court has jurisdiction only where the right of appeal has been exercised pursuant to statutory direction. Such jurisdiction is appellate, not original, and the right thereto is governed by statute, not by the constitution. Id. § 7784a, and cases under note 8, and § 7795, and cases under note 93.
We do not think consent by the parties to litigate this issue confers jurisdiction upon an appellate court. This must necessarily be so, as appellate jurisdiction depends upon statutory authority only, not upon what the parties may wish to litigate. Hence were we to assume jurisdiction and render decision upon a matter lying exclusively within that of the probate court, we would be only rendering an advisory opinion, binding no one. It would not result in res adjudicata. County Board of Education v. Borgen, 192 Minn. 512, 519, 257 N.W. 92.
The cause is therefore remanded to the district court with instructions to eliminate that portion of its findings, order for judgment, and judgment having to do with any property not included in the decree for partial distribution made by the probate court and from which the appeal was first taken. In all other respects the judgment is affirmed. *Page 41 
Respondents will recover their costs and disbursements here, as the modification made is not the result of any error assigned by or available to appellants.
So ordered.