IN RE ESTATE OF ELIZABETH C. QUINLAN.
STATE v. WILLIAM LAHIFF AND OTHERS.[1]

January 26, 1951.

No. 35,165.

---

[1] Reported in 45 N. W. (2d) 807.

36

*Kelly & Callinan,* for appellants.

*J. A. A. Burnquist,* Attorney General, and *Joseph S. Abdnor,* Special Assistant Attorney General, for the State.

MATSON, JUSTICE.

Appeal from an order denying a new trial after a determination by the district court that a certain transfer of property made pursuant to a bequest and devise by Elizabeth C. Quinlan to The Elizabeth C. Quinlan Foundation, Inc., is subject to the inheritance tax imposed by M. S. A. c. 291.[2]

[2]This case comes to the writer by reassignment.

Appellants, who are the executors of decedent's will, contend that the bequest is exclusively for a charitable purpose and is therefore exempt from inheritance taxation under § 291.05.

Elizabeth C. Quinlan, through her lawyer, arranged for the incorporation of The Elizabeth C. Quinlan Foundation, Inc. (hereinafter called the Foundation) pursuant to articles of incorporation dated November 26, 1945, wherein she was designated as president and as a member of the board of trustees. The preamble to the articles recites that the purpose was to establish a charitable corporation pursuant to R. L. 1905, § 3102 (now § 309.01). Paragraph II of the articles, however, provides:

"The general purposes of this corporation shall be as follows:

"1. To render financial assistance to worthy religious, educational, scientific, *medical, surgical, social* or charitable organizations operating within the State of Minnesota.

"2. To render financial assistance to needy individuals residing within the State of Minnesota for their advancement and assistance in religious, educational, scientific, *medical, surgical, social* or charitable work or study.

"3. To promote and carry out under its own name projects or enterprises of a religious, educational, scientific, *medical, surgical, social* or charitable nature such projects or enterprises to be carried on within the State of Minnesota." (Italics supplied.)

Paragraph IV of the articles further provides that the corporation—

"shall not divert any gift, grant, devise or bequest from the specific purpose or purposes designated by the donor, without the consent of such donor; * * *."

The decedent, on December 21, 1945, less than a month after she had signed the aforesaid articles of incorporation, executed her last will and testament. She died on September 15, 1947. By Article II of her will, she bequeathed and devised her Minneapolis residence and its contents—after granting a life estate to her sister, who, however, predeceased her—to the Foundation for

any purpose within the general purposes of the Foundation.[3] Following the devise of her residence are a number of other bequests, including a gift of a substantial part of her residuary estate to the Foundation. With respect to all property given to the Foundation, she provided in Article V, Section 8:

"All such part of my estate as may herein be devised or bequeathed to THE ELIZABETH C. QUINLAN FOUNDATION, INC., shall be devoted by it to the furtherance of its general objects and purposes. The Board of Trustees of said corporation *shall have unrestricted power to dispose of all, or any part, of the property herein devised or bequeathed to said corporation,* both the income therefrom and the principal thereof, *for the promotion of any religious, educational, scientific, medical, surgical, social or charitable activity or activities within the powers and purposes of said corporation.*

"If at any time the Board of Trustees shall come to the conclusion that the general objects and purposes for which said Foundation is organized, and for which the devises and bequests herein given to said corporation are made, may be more practically and effectively achieved through some other agency or agencies (*of similar charitable nature*), said Board may transfer all such assets as may then remain to any such other agency or agencies selected by it, to be held, used or disposed of by such transferee agency or agencies in such manner as said Board of Trustees shall direct at the time of any such transfer or transfers." (Italics supplied.)

Under a partial decree of distribution, the Hennepin county

[3]The will left a life estate in the residence to her sister, but the sister predeceased Miss Quinlan. The will also provided for the residence to be occupied as a retreat for Catholic young women for as long as the Senecal Sisters of Chicago should desire to operate the residence as such a retreat. However, the will also provided: "The Board of Trustees of said Foundation shall, however, *in spite of any provision of this paragraph, have absolute power*, after the death of my said sister, *to use or dispose of said premises at any time as in their judgment and discretion they shall so decide, for any purpose within the general purposes of said Foundation.*" (Italics supplied.)

probate court assigned decedent's residential property to the Foundation as exempt from all inheritance taxes. Respondent, through its commissioner of taxation, appealed to the district court, which found that the Foundation does not come within the meaning of § 291.05, which exempts from inheritance taxation—

"Any devise, bequest, gift, or transfer to or for the use of any corporation, fund, foundation, trust, or association operated for religious, charitable, scientific, literary, education, or public cemetery purposes exclusively, * * *."

■ Respondent contends that the words "medical," "surgical," and "social," *as used in the "general purposes" clause of the Foundation's articles of incorporation,* permit the Foundation to engage in activities which are not exclusively charitable and that therefore it does not qualify for tax exemption as a charitable corporation within the meaning of § 291.05.

Unnecessary difficulty in the consideration of this case stems from the unwarranted assumption that decedent's bequest to the Foundation cannot possibly qualify for tax exemption unless the Foundation is a purely charitable corporation. This assumption wholly overlooks the possibility that a construction of her will *as a whole in the light of the surrounding circumstances* may disclose an intent not to make an outright gift, but a gift in trust for exclusively charitable purposes. In ascertaining whether a charitable trust has been created, we must not overlook the fundamental change in the policy of this jurisdiction with respect to charitable trusts beginning with the enactment of L. 1927, c. 180 (now § 501.12). This statute reinstated charitable trusts to a position similar to the favored one they enjoyed at common law. By legislative mandate, charitable trusts are not only valid, but must be given a liberal construction. § 501.12; In re Estate of Lundquist, 193 Minn. 474, 259 N. W. 9; In re Estate of Peterson, 202 Minn. 31, 277 N. W. 529; 14 Minn. L. Rev. 587; 23 Minn. L. Rev. 670; 2 Bogert, Trusts and Trustees, § 322, pp. 1025–1026. See, Longcor v. City of Red Wing, 206 Minn. 627, 289 N. W. 570.

In the light of this legislative mandate, it is neither desirable nor proper to follow the strained reasoning of our earlier decisions, which were born of an effort to sustain charitable gifts when charitable trusts were unauthorized.[4] This court has already recognized the desirability of adopting a more natural construction in keeping with the intent of the donor by holding that a gift to a charitable corporation, although in the form of an outright gift, in the absence of express language to the contrary, is in purpose and practical effect a charitable trust. In the Peterson case we said (202 Minn. 36, 277 N. W. 532):

"* * * In form these are direct gifts to named beneficiaries, each of which is a charitable activity, an institution established and functioning solely for such purposes. In consequence, we hold, in line with many courts, that a devise or bequest, although in form an outright gift, yet when made to an institution whose sole reason for existence and whose entire activity is charitable, is in purpose and practical effect a charitable trust."[5]

If the intention to create a charitable trust may be inferred from little more than the circumstances that a bequest—which is in the form of an outright gift—is made to an organization whose sole reason for existence and whose entire activity is charitable, does it not follow that we have a much stronger basis for supporting an intent to create a trust—even though the recipient of the bequest is not, strictly speaking, a charitable corporation—where such intent is disclosed by the very language of the donor's will?

---

[4] The history of the early repudiation of charitable trusts in Minnesota, as a parallel to a similar history in New York, Michigan, and Wisconsin, may be found by referring to Thurston, *Charitable Gifts and the Minnesota Statute of Uses and Trusts*, 1 Minn. L. Rev. 201; Zollmann, Charities, §§ 34 to 69, 73, 365, with particular reference to §§ 46, 67, 68, 73, 365. As to subsequent remedial legislation, see 14 Minn. L. Rev. 587; 23 Minn. L. Rev. 670.

[5] We have not overlooked certain language to the contrary in the introductory note to Restatement, Trusts, c. 11, p. 1093.

■■■■■ We come to a construction of decedent's will. If we wholly disregard the second paragraph of Article V, Section 8, *in the absence of a determination that the Foundation is a purely charitable corporation,* it would indeed be difficult to come to any other conclusion than that testatrix intended to make an outright gift to the Foundation for *its general purposes* and not a gift in trust. We are not, however, at liberty to ignore any part of the will. The primary rule of construction is that the intent of the testatrix, as expressed in the language of the will, is to be gathered from everything contained within its four corners, as read in the light of the surrounding circumstances.[6] In the second or concluding paragraph of Article V, Section 8, testatrix expressly provided that if the Foundation's board of trustees should come to the conclusion that the general objects and purposes for which the Foundation was organized, *"and for which the devises and bequests herein given to said corporations are made,* may be more practically and effectively achieved through some other agency or agencies (*of similar charitable nature*)" (italics supplied), said board should have the right to make a transfer of the assets so devised and bequeathed to such other agency or agencies. What is the significance of the words "of similar charitable nature"? They manifest an unmistakable intent that the gift to the Foundation for its general purposes was not absolute, but was qualified by the imposition upon the Foundation and its officers of a fiduciary or equitable duty to use the gift only for such purposes of the Foundation as should be exclusively charitable. The language used in the earlier parts of the will imports an absolute gift, but it is not controlling. In construing a will containing inconsistent provisions, the language first used has no greater significance than the language later used; but, if explanatory or qualifying later language indicates that a

---

[6]In re Estate of Anderson, 148 Minn. 44, 180 N. W. 1019; In re Estate of Kelly, 177 Minn. 311, 225 N. W. 156, 67 A. L. R. 1268; 6 Dunnell, Dig. & Supp. § 10257; 57 Am. Jur., Wills, § 1094; see, Restatement, Trusts, § 358, *comment c.*

different meaning was intended by the testatrix, the literal or technical meaning of the language first used should be disregarded, and the intention of the testatrix, as revealed by the will as a whole, must prevail. Board of Directors of City Trusts v. Maloney, 78 App. D. C. 371, 141 F. (2d) 275.

Less than a month prior to the making of her will, testatrix had been the moving spirit in incorporating the Foundation. Undoubtedly she knew that the articles of incorporation (paragraph IV) specified that no gift, devise, or bequest could be diverted from the specific purposes designated by the donor. In the light of this knowledge, testatrix, who was an able and experienced businesswoman, no doubt anticipated that, with changing conditions, it might become desirable to administer her gift through some other agency. In making provision for a possible transfer of what she had bequeathed and devised to another agency, her use of the words "of similar charitable nature" is significant, and such words should be given their full and natural meaning. Obviously, her gift was *in trust for charitable purposes,* although she did not expressly use the word *trust.* No special language is needed to express an intent to create a charitable trust. In re Estate of Anderson, 148 Minn. 44, 180 N. W. 1019; 3 Scott, Trusts, § 351; 2 Bogert, Trusts and Trustees, § 369. We have here all the elements necessary for the creation of a charitable trust within the meaning of the following definition found in Restatement, Trusts, § 348:

"A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose."

See, Estate of Rowell, 248 Wis. 520, 22 N. W. (2d) 604. In ascertaining the existence of a testamentary charitable trust, we said in In re Estate of Peterson, 202 Minn. 31, 37, 277 N. W. 529, 533:

"To carry out the intention of testatrix is the 'one controlling factor. It is the trail which the courts must follow in all its turns and windings, through swamps and over hills, provided only that it has been sufficiently blazed and does not trespass on forbidden territory.' Zollmann, Am. Law of Charities, p. 93, § 140. As has been seen, the *general purpose and intent* of testatrix is clearly apparent, hence her directions 'must be adhered to as rigidly by the courts' as by trustees. *Id.* p. 92, § 139." (Italics supplied.)

■ The conclusion that a purely charitable trust was intended and created is fortified by the fact that charitable trusts are highly favored in this jurisdiction since the enactment of § 501.12, as well as by the courts generally, and that all instruments where they are concerned are to be construed liberally in their behalf. Board of Directors of City Trusts v. Maloney, 78 App. D. C. 371, 141 F. (2d) 275; 2 Bogert, Trusts and Trustees, § 369; 2 Perry, Trusts and Trustees (7 ed.) § 697.

After thus determining that testatrix created a trust for exclusively charitable purposes within the area designated by the general purposes of the Foundation, we find no difficulty in coming to the further conclusion that her bequest and devise to the Foundation are clearly exempt from taxation within the meaning of § 291.05.[7] As modified and restricted by the exclusively charitable purpose of the trust, there can be no legitimate objection to the words "medical," "surgical," and "social," as designated among the purposes of the Foundation. Medical and surgical activities do indeed occupy an important and beneficent pur-

---

[7] For an even more liberal application of tax exemption by the federal courts *(involving an outright gift coupled with certain precatory words)* under 26 USCA, § 812(d), Internal Revenue Code, which contains language almost identical with M. S. A. 291.05, see In re Sage's Estate (3 Cir.) 122 F. (2d) 480, 137 A. L. R. 658 (footnote 2), certiorari denied, 314 U. S. 699, 62 S. Ct. 480, 86 L. ed. 559.

See, also, Estate of Rowell, 248 Wis. 520, 22 N. W. (2d) 604, involving a construction of an outright bequest, coupled with precatory words, as creating a charitable trust.

pose in the field of pure charity. The word "social" is frequently used in connection with charitable activities. Charitable organizations, whether supported by the government and its subdivisions or by private endowment and contributions, do much charitable work that is frequently described as "social service." What is a charitable purpose cannot be explicitly defined for all time and for all circumstances.[8]

"* * * It is not desirable to attempt to bind the courts by a fixed definition in statute or decision. The courts should be left free to apply the standards of the time. What is charitable in one generation may be noncharitable in a later age, and vice versa. Ideas regarding *social* benefit and public good change from century to century, and vary in different communities." (Italics supplied.) 2 Bogert, Trusts and Trustees, § 368, p. 1129.

■ It is immaterial whether the designated trustee of a charitable trust is a charitable corporation or a private corporation *when the trust res is clearly earmarked for a purely charitable use.* Matter of Frasch, 245 N. Y. 174, 156 N. E. 656. If the corporation becomes incapable of administering the trust, the court can easily supply a successor. It is elementary that a court of equity will not permit a trust to fail for want of a trustee. Estate of Rowell, 248 Wis. 520, 22 N. W. (2d) 604; 2 Bogert, Trusts and Trustees, § 328. Furthermore, if an attempt ever is made to deviate from a purely charitable purpose, the public interest will be protected, in that the attorney general has not only the right but the duty to enforce charitable trusts by proper court proceedings. § 501.12, subd. 3; Schaeffer v. Newberry, 227 Minn. 259, 35 N. W. (2d) 287; Longcor v. City of Red Wing, 206 Minn. 627, 289 N. W. 570; see, Restatement, Trusts, § 391; 2 Bogert, Trusts and Trustees, § 411, p. 1255; 12 Minn. L. Rev. 653.

The order appealed from is reversed and the case is remanded to

[8]For Gray's classic definition, see Jackson v. Phillips, 96 Mass. (14 Allen) 539, 556; Zollmann, Charities, § 201.

the trial court with directions to enter judgment in accordance with this opinion.

So ordered.

LORING, CHIEF JUSTICE (dissenting).

September 15, 1947, Elizabeth C. Quinlan, then a resident of Minneapolis, died leaving a will by which she devised and bequeathed her "residence located at 1711 Emerson Avenue South, in the City of Minneapolis, * * * with all of its contents, * * * to The Elizabeth C. Quinlan Foundation, Inc., * * * for any purpose within the general purposes of said Foundation."[9]

The preamble to the articles of incorporation of The Elizabeth C. Quinlan Foundation, Inc., recited that the incorporators had organized the Foundation "for the purpose of organizing a charitable corporation pursuant to Section 3102, Revised Laws of 1905" (now M. S. A. 309.01). The articles of incorporation, however, provided:

"The general purposes of this corporation shall be as follows:

"1. To render financial assistance to worthy religious, educational, scientific, medical, surgical, social or charitable organizations operating within the State of Minnesota.

"2. To render financial assistance to needy individuals residing within the State of Minnesota for their advancement and assistance in religious, educational, scientific, medical, surgical, social or charitable work or study.

"3. To promote and carry out under its own name projects or enterprises of a religious, educational, scientific, medical, surgical,

---

[9]The will left a life estate in the residence to her sister, but the sister predeceased Miss Quinlan. The will also provided for the residence to be occupied as a retreat for Catholic young women for so long as the Senecal Sisters of Chicago should desire to operate the residence as such a retreat. However, the will also provided: "The Board of Trustees of said Foundation shall, however, *in spite of any provision of this paragraph, have absolute power,* after the death of my said sister, *to use or dispose of said premises at any time as in their judgment and discretion they shall so decide, for any purpose within the general purposes of said Foundation.*" (Italics supplied.)

46

social or charitable nature such projects or enterprises to be carried on within the State of Minnesota."

Section 291.05 provides an exemption from the inheritance tax for gifts, devises, bequests, or transfers to any foundation, * * * operated within this state for religious, charitable, scientific, literary, education or public cemetery purposes exclusively, * * *." Since the gift from Miss Quinlan to the Foundation conferred upon its trustees "absolute power, * * * to use or dispose of said premises at any time as in their judgment and discretion they shall so decide, for any purpose within the general purposes of said Foundation," the record squarely presents the question whether the gift falls within the exemption provided by § 291.05.

It will be noted that all the purposes for which an organization may be incorporated under § 309.01 are not included in the exemptions provided in § 291.05 (exemption statute). The latter confines such exemptions to those foundations organized and operated "within this state for religious, charitable, scientific, literary, education or public cemetery purposes exclusively," whereas a corporation may be organized under § 309.01 for "any one or more of the following purposes: religious, social, moral, educational, scientific, medical, surgical, benevolent, charitable, fraternal, or reformatory, including care of the sick, aged, and disabled, and administering to the needs of the poor; * * *." Therefore, the medical, surgical, and social purposes included in the general purposes of the Foundation are not specified as purposes entitling the Foundation to inheritance tax exemption under § 291.05. Consequently, if any part of the funds or property given to the Foundation by Miss Quinlan can be used for medical, surgical, or social purposes, the entire gift is subject to the tax, because the entire gift might, within the powers of the trustees of the corporation, be devoted entirely to those nonexempt purposes.

It can readily be seen that the Foundation might give financial assistance to a school or hospital operated wholly for profit. The Foundation's articles also authorize it to render financial assistance to *worthy* educational and medical organizations. There is no

provision that they must be nonprofit. Again, it would hardly be contended that devises made to proprietary organizations should be exempt from our inheritance tax, since such organizations are not operated exclusively for the purpose named, but rather are operated for profit. Although the gift here is to the Foundation, a nonprofit organization, it will be a convenient tax dodge if a tax-free devise can be made to an organization whose articles permit it to serve as a mere conduit for transferring property to organizations which otherwise could not receive it tax-free. To say that a charitable corporation can be prevented from using its funds in the manner described above is to assume the very point in issue, namely, whether this Foundation is a charitable organization.

We come now to the word "social," included in the general purposes of the Foundation. It will be noted that the single word "social," not the phrase "social welfare," is used. Many social clubs have been organized under § 309.01 as corporations, not for pecuniary profit, but obviously such clubs as the Duluth Club, the Lafayette Club, the Minnetonka Country Club, the Minneapolis Automobile Trade Association, Hennepin County Bar Association,[10] and others would not be tax-exempt, and yet assistance to such clubs falls clearly within the powers of the trustees according to the articles of incorporation of the Foundation here. From the foregoing, it is clear that the Quinlan Foundation has been given power in its articles to engage in purposes which take it out of the express terms of the exemption statute.

That the purposes stated in the Foundation's articles are not within the express terms of the exemption statute is particularly fatal to appellants' claim of exemption in this state, where a rule of strict construction is applied to tax-exemption statutes. "The

[10] See, Duluth Club v. MacDonald, 74 Minn. 254, 76 N. W. 1128; Lafayette Club v. Roberts, 196 Minn. 605, 265 N. W. 802; Jackson v. Minnetonka Country Club, 166 Minn. 323, 207 N. W. 632; Strong v. Minneapolis Auto. Trade Assn. 151 Minn. 406, 186 N. W. 800; LaBelle v. Hennepin County Bar Assn. 206 Minn. 290, 288 N. W. 788, 125 A. L. R. 1023; Anderson v. Amidon, 114 Minn. 202, 130 N. W. 1002, 34 L.R.A.(N.S.) 647 (Wheaton Commercial Club).

48

general rule is that laws and constitutional provisions exempting property from taxation are to be strictly construed." State v. Union Congregational Church, 173 Minn. 40, 45, 216 N. W. 326, 328; State v. Carleton College, 154 Minn. 280, 191 N. W. 400; Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. (2d) 803. In State v. Bishop Seabury Mission, 90 Minn. 92,. 96, 95 N. W. 882, 883, we said:

"* * * The question whether defendant's endowment fund is exempt from taxation must be determined, therefore, *solely from the construction to be placed upon the constitutional provision just quoted. It is to be construed strictly within the rules of law applicable to the subject,* for *immunity from taxation is never recognized,* except where granted by the lawmaking power *in terms too plain to be misunderstood;* and *judicial construction cannot make statutes providing therefor embrace other property than what is plainly expressed in the law."* (Italics supplied.)

In Ramaley v. City of St. Paul, 226 Minn. 406, 412, 33 N. W. (2d) 19, 23, this court stated:

"* * * *Exemptions from taxation will not be presumed, but must be established by clear and express language, and all presumptions* are against an exemption. St. Peter's Church v. County of Scott, 12 Minn. 280 (395); State ex rel. Wisconsin C. R. & I. Bureau v. City of Milwaukee, 249 Wis. 71, 23 N. W. (2d) 501; North Platte Lodge v. Board of Equalization, 125 Neb. 841, 252 N. W. 313, 92 A. L. R. 658. *An exemption from taxation is a privilege of such high order and is so rarely granted that it can be established or extended only by, and according to the reasonable and natural import of, clear and explicit language and not by implication or presumption."* (Citing cases.) (Italics supplied.)

I am not unmindful of a countervailing contention made by appellants to the effect that the rule of strict construction, being a matter of public policy, will yield to the dictates of a higher public policy. Union & New Haven Trust Co. v. Eaton (D. C.) 20 F. (2d) 419. Appellants have urged that the encouragement of charitable

gifts is a public policy such as will override the rule of strict construction of tax-exemption statutes. It is the function of the legislature, and not of this court, to weigh these considerations of public policy and to give one or the other priority. This court is bound by precedents to employ a strict construction of tax-exemption statutes until it receives a contrary legislative mandate.

Since the preamble to the Foundation's articles of incorporation states that the purpose of the incorporators was to form a "charitable corporation," appellants contend that the ensuing articles which set forth the general purposes of the Foundation are limited accordingly. This court, however, has ruled in at least two cases that the label of the corporation in the preamble yields to purposes announced in the articles. In State ex rel. Clapp v. Minnesota Thresher Mfg. Co. 40 Minn. 213, 222, 41 N. W. 1020, 1023, 3 L. R. A. 510, the following statement was made with reference to this matter:

"The articles of association state that the corporation was formed under the act of 1873 relating to manufacturing corporations, but this does not make it so. *To determine its actual character, we must look to the objects of its formation, and the nature of its business, as stated in the articles themselves.* It cannot be made one kind of corporation merely by labelling it such, if its declared objects and purposes show it to be something else." (Italics supplied.)

Again, in International Boom Co. v. Rainy Lake R. B. Corp. 97 Minn. 513, 519, 107 N. W. 735, 737, where plaintiff contended that defendant was bound as to its character and purposes by a recital in the preamble to its articles, this court said:

"* * * In determining the real character of a corporation reference must be had to that portion of the articles of association expressing the general nature of its business. It cannot be made one kind of corporation merely by being labeled as such, if its declared objects show it to be something else."

Therefore, we must be guided by the articles of incorporation as to the character and scope of the corporate powers and purposes, not by any recital in the preamble.

Appellants' second contention is that the word "charitable," being the last one added to the purposes for which a corporation could be organized under § 309.01, is a generic term, comprehending and including all the purposes theretofore included in the statute, and that any corporation organized under § 309.01 is a charitable corporation under § 291.05. It is a sufficient answer to this contention that numerous admittedly noncharitable corporations have been organized under § 309.01 for purposes stated therein. (See cases in footnote 10.) It is obvious that the word "charitable" is not used generically in § 309.01 to include any or all of the other enumerated purposes for which incorporation is allowed, and we should so hold.

Appellants follow a similar course in their third contention by urging that the words "charitable" and "scientific" in the exemption statute are generic terms intended to embrace the words "social," "medical," and "surgical" as used in the articles of incorporation. This court has had occasion to consider this general problem in two previous cases. In Christgau v. Woodlawn Cemetery Assn. 208 Minn. 263, 293 N. W. 619, this court had before it the question whether the Woodlawn Cemetery Association of Winona came within the Minnesota unemployment compensation law and whether, as an employer of labor, unemployment compensation contributions were due from the cemetery association. The claim was made that it was organized and operated exclusively for charitable purposes and exempt from the compensation law. In discussing the problem thereby presented, this court said (208 Minn. 267, 293 N. W. 621):

"* * * Defendant relies on the rules obtaining in equity for defining a charitable use within the purview of 43 Eliz. c. 4, under which *a charitable purpose embraces the improvement and promotion of the general welfare. But that rule has no application*

*where, as here, there are constitutional and statutory provisions
indicating that the word 'charitable' is used in a restricted sense
not comprehending other enumerated subjects.* The enumeration
in our constitution and statutes of public charities, cemeteries,
institutions of learning, and other subjects indicates that *each
of the subjects enumerated is distinct from the others.* Distinc-
tion rests on difference. *The meaning of the word 'charitable' will
be so restricted as to exclude subjects that might otherwise be
included in the word in order to observe the differences between
the subjects enumerated.* These principles are settled in accord-
ance with the weight of reason and authority by our decision in
State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882, 883,
where an institution of learning claimed that its endowments
were exempt from taxation on the grounds that it was both a
charitable institution and a college or seminary of learning. *We
held that, while the purposes of the institution were charitable
under 43 Eliz. c. 4, and the rules governing charitable gifts and
uses in equity, those rules were not applicable and that the ques-
tion was one of constitutional construction.* * * * Our reasoning
was to the effect that each subject enumerated was to be *differ-
entiated from the others to give meaning and effect to the words
used; that enumeration involves classification based on differ-
ences between the subjects enumerated; that the process places
each subject in its own class and gives it a meaning of its own;*
that by the same token *it excludes each subject from the classes
to which others are assigned;* and that, where the law, constitu-
tional or statutory, indicates that there is a difference in subjects
enumerated, the distinction should be observed." (Italics sup-
plied.)

The foregoing authorities adequately foreclose the contention
of appellants that the word "charitable" or, for that matter, the
word "scientific" should be construed as generic terms embracing
the words "medical," "surgical," and "social" purposes recited in
the Quinlan Foundation's articles of incorporation. The Christ-

gau case confirms our previous holding in State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882, which eliminates the old equity rule of 43 Eliz. c. 4, in situations where the constitution or a statute enumerates the subjects of tax exemption. Those cases clearly hold that enumerations in our statutes rest upon distinctions, and it thus follows that the terms "social," "medical," and "surgical" purposes enumerated in § 309.01 and used in the articles of incorporation should not be read into the terms "charitable" and "scientific" purposes enumerated in § 291.05. We should refuse to employ that Procrustean method of construction wherein the subject matter is hewed to fit the exemption statute or the exemption statute is stretched to fit the subject matter.

This case has thus far been discussed upon the assumption that the devise[11] in question is an outright devise of property to a nonprofit corporation for the purposes stated in the corporation's articles of incorporation. For the reasons already stated, it clearly appears that such a devise is not exempt from the state inheritance tax under the provisions of § 291.05. In brief, the devise is not exempt, since the property devised may be devoted to purposes other than those specified in the exemption statute. Although the theory upon which this case has been decided was not presented below and although it has not been briefed or argued on this appeal, the majority of the court has decided that the devise made in Article II of decedent's will should be construed as a devise in trust for exclusively charitable purposes rather than an outright devise to the Foundation for its general purposes. The majority has developed this theory in order to hold that the devise to the Foundation is tax-exempt under the provisions of § 291.05, which exempts a devise in trust for religious, charitable, scientific, literary, educational, or public cemetery purposes exclusively. This approach eliminates all questions concerning the purposes of the Foundation, because it is immaterial

[11]The term "devise" is used herein to include both "devise" and "bequest."

whether the designated trustee of a charitable trust is a charitable corporation or a business corporation when the trust *res* is clearly earmarked for a purely charitable use. Matter of Frasch, 245 N. Y. 174, 156 N. E. 656.

The distinction between a devise in trust and an outright devise for specified purposes is narrow at best.[12] The purpose in using either of these methods of disposing of property is often the same; but, when one of these methods runs afoul of some legal or equitable rule, this court has been prone to find that the other method was intended.[13] In Minnesota, prior to 1927 charitable trusts were invalid,[14] while outright grants to charitable corporations for charitable purposes were valid.[15] It is not surprising that during this period numerous grants in trust were construed as being legal grants for specified charitable purposes in order to uphold the grant.[16] Since 1927, this type of legal legerdemain has not been necessary in the field of charitable gifts. A charitable trust and a legal grant for charitable or other purposes are both valid under Minnesota law,[17] and one need not be turned into the other by a wave of the judicial wand. This court

---

[12]See, 3 Scott, Trusts, § 348.1.

[13]See, Thurston, *Charitable Gifts and the Minnesota Statute of Uses and Trusts*, 1 Minn. L. Rev. 200, 229; Dwan, *Minnesota's Statute of Charitable Trusts*, 14 Minn. L. Rev. 587, 589.

[14]By R. S. 1851, c. 44, § 1 (M. S. A. 501.01), all uses and trusts except for certain specified classes of private trusts were abolished. Until the enactment of L. 1927, c. 180 (M. S. A. 501.12), expressly authorizing charitable trusts, the consistent holding of this court was that such a trust could not be created either as to real (Little v. Willford, 31 Minn. 173, 17 N. W. 282) or personal property (Shanahan v. Kelly, 88 Minn. 202, 92 N. W. 948; In re Estate of Ford, 144 Minn. 454, 175 N. W. 913).

[15]Lane v. Eaton, 69 Minn. 141, 71 N. W. 1031, 38 L. R. A. 669; Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104; Young Men's Christian Assn. v. Horn, 120 Minn. 404, 139 N. W. 805; In re Estate of Little, 143 Minn. 298, 173 N. W. 659.

[16]See cases cited in footnote 15, *supra*.

[17]In re Estate of Lundquist, 193 Minn. 474, 259 N. W. 9; Longcor v. City of Red Wing, 206 Minn. 627, 289 N. W. 570.

should therefore call a spade a spade and construe the will of the testatrix according to its terms without distortion of its natural meaning. Merely because this court prior to 1927 was constrained to read language of trust as language of outright legal grant in order to save the disposition from invalidity is scant authority for now reading language of outright devise as language of trust in order to create a tax exemption for a particular disposition.

Although no case in this state has been found which involves the exact problem presented in the case at bar, it is long-established and presently prevailing law that courts will not impute a trust where a trust was not in fact the thing contemplated.[18] In a long line of cases, analogous in principle to the present case, courts have uniformly held that an imperfect gift cannot be converted into a declaration of trust.[19] In the light of these settled rules, I do not think that the authority given the courts by § 501.12, subd. 3, to liberally construe trusts so that the intention of the donor shall be carried out, is authority to create trusts out of whole cloth or that it is authority to tailor a trust out of the materials of an outright devise in order to make it tax-exempt. Section 501.12 seeks to establish the doctrine of judicial *cy pres* and to invoke rules of liberal construction to the end that ex-

[18]The federal district court sitting in Minnesota stated the correct rule in this respect when it said:

"In order to constitute a trust, the language used in creating the same must be explicit, definite and certain, or the surrounding circumstances must show with reasonable certainty that a trust was intended to be created." Bingen v. First Trust Co. (D. C.) 23 F. Supp. 958, 961. See, also, Young v. Young, 80 N. Y. 422, 36 Am. R. 634; Eschen v. Steers (8 Cir.) 10 F. (2d) 739; In re Estate of Skuse, 165 Misc. 554, 1 N. Y. S. (2d) 202; Shea v. Crofut, 203 App. Div. 210, 196 N. Y. S. 850; Restatement, Trusts, § 23.

[19]Bingen v. First Trust Co. (D. C.) 23 F. Supp. 958; Allshouse's Estate, 304 Pa. 481, 156 A. 69, 96 A. L. R. 379; Eschen v. Steers (8 Cir.) 10 F. (2d) 739; Young v. Young, 80 N. Y. 422, 36 Am. R. 634; Shea v. Crofut, 203 App. Div. 210, 196 N. Y. S. 850; 1 Scott, Trusts, § 31.

press trusts will be salvaged where they are imperfect in form,[20] but it does not, either by express words or by reasonable implication, call upon this court to find a trust where none was intended. The case of In re Estate of Peterson, 202 Minn. 31, 277 N. W. 529, holds that a charitable trust may arise in the absence of express words of trust and notwithstanding words of outright devise where an intention to create a trust is otherwise disclosed. With reference to the Peterson case, however, it is important to note that an intention to create a trust was presumed from the fact that the gift was made to a strictly charitable organization for charitable purposes. This holding was contrary to the rule stated in Restatement, Trusts, c. 11, Introductory Note, p. 1093, which reads as follows:

"Property may be devoted to charitable purposes not only by transferring it to trustees for such purposes, but also by transferring it to a charitable corporation for any of the purposes for which the corporation is organized or for a particular one of its purposes. Where property is given to a charitable corporation, a charitable trust is not created, even though by the terms of the gift the corporation is directed to hold the principal forever and to devote the income only to the accomplishment of the purposes of the corporation, and even though by the terms of the gift the corporation is directed to use the property only for a particular one of its purposes." See, also, 3 Scott, Trusts, § 348.1.

It might also be well to note that the decision in the Peterson case concerned a devise which would have been invalid had it not been held to create a trust. The court obviously employed a strained construction to save the devise from invalidity; but, whatever the court's decision might now be on facts similar to those in the Peterson case, it should not be called upon to reconsider that decision in the case at bar, because the Quinlan Foundation is not a strictly charitable corporation. If, then,

[20]In re Estate of Lundquist, 193 Minn. 474, 259 N. W. 9; In re Estate of Peterson, 202 Minn. 31, 277 N. W. 529.

an intention to create a charitable trust cannot be presumed from the nature of the organization to which the devise is made, such an intention, if any, must be otherwise disclosed. In seeking the intention of the testatrix, it is well settled that we must look to the language of the will taken as a whole and read it in the light of surrounding circumstances.[21] In determining her intentions, we should look first to those provisions bearing directly on the devise here in question.

By Article II of her will, testatrix devised certain property to the Foundation with absolute power in the board of trustees of the Foundation to use or dispose of the property for any purpose within the general purposes of the Foundation. By Article V, Section 8, of her will, testatrix further provided that all such part of her estate as might be devised or bequeathed to the Foundation should be devoted by it to the furtherance of its general objects and purposes. The board of trustees of the Foundation was given unrestricted power to dispose of all or any part of the property so devised for the promotion of any religious, educational, scientific, medical, surgical, social, or charitable activity or activities within the powers and purposes of the Foundation. In addition, Article V, Section 8, provided:

"If at any time the Board of Trustees shall come to the conclusion that the general objects and purposes for which said Foundation is organized, and for which the devises and bequests herein given to said corporation are made, may be more practically and effectively achieved through some other agency or agencies (of similar charitable nature), said Board may transfer all such assets as may then remain to any such other agency or agencies * * *."

The view expressed in the majority opinion that the phrase "of

---

[21]In re Estate of Anderson, 148 Minn. 44, 180 N. W. 1019; In re Estate of Kelly, 177 Minn. 311, 225 N. W. 156, 67 A. L. R. 1268; 6 Dunnell, Dig. & Supp. § 10257; 57 Am. Jur., Wills, § 1094; see, Restatement, Trusts, § 358, *comment c.*

similar charitable nature" may be seized upon as indicating that testatrix intended to create a trust for exclusively charitable purposes seems to me untenable, not only because this language fails to show an intention to create a trust, but also because the trust, if any, is for other than charitable purposes. Such an interpretation would do great violence to accepted rules of construction.

"* * * it is a principle of interpretation that an absolute interest given in one part of a will in clear and decisive terms cannot be cut down or limited by subsequent provisions of the will unless the part providing for the lesser interest is expressed in as clear and decisive language as is the part giving the larger interest." Downs v. Casperson, 20 Del. Ch. 119, 122, 171 A. 753, 755. See, also, Lewis v. Novello, 22 Del. Ch. 134, 194 A. 29; James v. James, 16 Del. Ch. 34, 139 A. 787.

To construe the parenthetical phrase "of similar charitable nature" as limiting the absolute interest granted in Article II of the will and as imposing a trust upon that interest is to abandon the well-considered principle of interpretation stated in the Downs case for a rule that language of outright grant employed throughout an instrument may be pared down by the slightest parenthetical remark. If the majority of the court allows this phrase to override the clear provisions of absolute power in Article II of the will and allows it also to curtail the broad powers of disposition clearly and expressly granted in both Articles II and V, Section 8, of the will, they are allowing the tail to wag the dog. A mandate to read the will as a whole and give it a liberal construction does not require or license this court to engage in that construction of documents which allows the ambiguous and equivocal provisions to govern those provisions which are clearly expressed.[22]

I look now to the will as a whole and to the context in which

[22]In re Thomas' Estate, 17 Wash. (2d) 674, 136 P. (2d) 1017, 147 A. L. R. 598; 2 Page, Wills (3 ed.) § 932; 2 Schouler, Wills, Executors and Administrators (6 ed.) § 900; 69 C. J., Wills, § 1158.

58

the disputed devise is found. By Article V of testatrix's will, a trust is created in express terms with numerous provisions set forth for its administration. It is thus apparent from the face of the will that it was drafted by one who knew how to create a trust where one was intended. That Article II of the will was not cast in terms of trust but instead in language of outright legal grant obviously was not a mistake of lay draftsmanship. Although words of art, normally used in the creation of a trust, are not necessary to create a trust in all cases,[23] the lack of such words in Article II of this particular will should be taken as a strong indication that no trust was intended.[24] Even discounting the fact that this will was witnessed and probably drafted by one of the ablest lawyers in the trust field, it seems amply clear from the foregoing examination that the words of outright grant far overshadow and control any indication of grant in trust. We have every indication that words of outright grant were used advisedly and not in ignorance of how a trust could be created. These reasons alone seem conclusive against our holding a trust to exist.

Even if the court holds that a trust is created by Article II of the will, there is great difficulty in further holding that such a trust was created exclusively for charitable purposes. To find a trust for exclusively charitable purposes, it is necessary to construe the phrase "of similar charitable nature," found in Article V, Section 8, of the will, as imposing upon the trustee Foundation a duty of using the trust property exclusively for charitable pur-

[23]In re Estate of Anderson, 148 Minn. 44, 180 N. W. 1019; 3 Scott, Trusts, § 351; 2 Bogert, Trusts and Trustees, § 369.

[24]The fact that a given instrument is drafted by a lawyer or other person competent to do legal drafting and observe legal distinctions is frequently given weight in construing the instrument. In re Estate of Boutelle, 218 Minn. 158, 15 N. W. (2d) 506, 154 A. L. R. 966; In re Trust Under Will of Davidson, 223 Minn. 268, 26 N. W. (2d) 223, 170 A. L. R. 215. Cf. In re Trust Estate of Thompson, 202 Minn. 648, 279 N. W. 574; Goodrich v. City Nat. Bank & Trust Co. 270 Mich. 222, 258 N. W. 253; see, 1 Scott, Trusts, § 23.

poses. I cannot agree that this casual parenthetical phrase expresses such a duty or that it was intended to express such a duty. The important thing to note about the phrase is that it describes the agency or agencies to which the Foundation's board of trustees may transfer property. By reference, the phrase also purports to describe the Foundation as an agency of a charitable nature. Since the preamble to the Foundation's articles of incorporation recites that the incorporators acted for the purpose of organizing a charitable corporation, it is understandable that the will referred to the Foundation—and agencies similar to it—as being charitable in nature; but labeling the Foundation as charitable does not make it so if its purposes as stated in its articles are other than charitable.[25] By the same token and upon the same authority, labeling a trust as charitable does not make it so where the powers given the trustees are other than charitable. The phrase "of similar charitable nature" does not expressly limit the broad powers given elsewhere in the will. To imply a limitation from this phrase, as I have already stated, is to allow the ambiguous and equivocal to govern that which is clearly expressed. For these reasons, the testatrix's will should not be construed as creating a trust for exclusively charitable purposes.

The matters remaining for consideration relate primarily to matters of evidence and can be discussed briefly.

Appellants contend that our inheritance tax exemption statute (§ 291.05) is copied from the federal internal revenue code, 26 USCA, § 812(d), and should be given the same construction (doubtless referring to the opinion of the deputy commissioner of internal revenue, exhibit 2, hereinafter considered, which acquits the Foundation of federal income and estate tax liability). This court seems to have credited New York with furnishing the pattern for our inheritance tax statutes. In re Estate of Bigelow, 199 Minn. 239, 271 N. W. 459; State v. Brooks, 181 Minn. 262,

[25]Accord, State ex rel. Clapp v. Minnesota Thresher Mfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510; International Boom Co. v. Rainy Lake R. B. Corp. 97 Minn. 513, 107 N. W. 735.

232 N. W. 331; State ex rel. Smith v. Probate Court, 136 Minn. 392, 395, 162 N. W. 459, 460. It seems more likely that the federal statute followed the course charted by preceding state statutes. 1 Griswold, Federal Taxation (2 ed.) 285. However that may be, the board of tax appeals, now the tax court, and such federal courts as have construed the federal tax measures which contain exemption clauses for charitable organizations, have held that the purpose of the organization must be determined from the purpose declared in the instrument creating it, and that its purposes must be exclusively within the exemption. Appeal of Fales, 9 B. T. A. 828; First Nat. Bank, Admr., v. Commr. of Int. Rev. 25 B. T. A. 252; Round Table Club v. Fontenot (5 Cir.) 143 F. (2d) 196; N. W. Municipal Assn. Inc. v. United States (8 Cir.) 99 F. (2d) 460. U. S. Treasury Regulation 105, § 81.45 (3 Federal Tax Service, § 24,168), provides specifically that the corporation must be organized and operated *exclusively* for one or more of the exempt purposes.

Exhibits 1 and 2 are respectively a questionnaire with answers and a letter from a deputy commissioner of the department of internal revenue giving an opinion that the Foundation is exempt from federal income and estate taxes under the internal revenue code. The trial court excluded these exhibits when offered in evidence. It was right for several reasons. The opinion (exhibit 2) was based on the false assumption that the Foundation was organized and operated exclusively for religious, scientific, and charitable purposes. In the answers to the questionnaire submitted to the commissioner, the officer of the Foundation stated that the Foundation was organized "for the purpose of rendering financial assistance to any worthwhile cause, be it of a religious, scientific, charitable or social nature, which would benefit mankind. This corporation was formed, with this as its sole purpose, at the instigation of Miss Quinlan." Obviously, this statement was made in an effort to bring the purposes within the equity rule of 43 Eliz. c. 4, a rule rejected by this court in Christgau v. Woodlawn Cemetery Assn. 208 Minn. 263, 293 N. W. 619, and State v. Bishop

Seabury Mission, 80 Minn. 92, 95 N. W. 882. There is nothing in the record to show that a copy of the Foundation's articles of incorporation was furnished the commissioner, as requested in the questionnaire. Even if the articles of incorporation had been so furnished, the opinion of a federal administrative officer that the Foundation was not taxable by the United States under the federal exemption, rendered long after the enactment of § 291.05, was not relevant as evidence, nor was it persuasive argument in a case involving the Minnesota inheritance tax. If, in fact, § 291.05 had been copied from the federal statute and that statute had been interpreted by a federal court of last resort prior to the enactment of § 291.05, a different question would be presented.

Exhibit 3 was the report of a firm of accountants on receipts and disbursements of the Foundation, evidently offered for the purpose of showing that the funds of the Foundation were disbursed for charitable purposes. This evidence would be irrelevant if the articles of incorporation included nonexempt activities in the general purposes of the Foundation, as the trial court concluded. The articles are the measure of its operations and possible operations. If the trustees might, under the articles, use any part of the gift for other than exempt purposes, the fact that up to the time of trial they had not done so would not avail them.

Appellants contend that it was the purpose of Miss Quinlan to organize a Foundation which should be exempt from the inheritance tax. I find no support for that statement in the record. The logical inferences are all to the contrary. Miss Quinlan was an intelligent, successful businesswoman, who had accumulated a large fortune in the commercial world. We may assume that her lawyers would call her attention to the provisions of § 291.05 and that she understood the English language. Such being the case, she would immediately realize that the general purposes of the articles which she signed did not fall within the exclusive requirements of the inheritance tax exemption statute. The only justifiable inference from these facts is that she desired to include purposes outside the exemptions. It is only natural that

as a public-spirited citizen she was above any desire to avoid the payment of the inheritance tax to the state in which she had prospered so abundantly and to which she, no doubt, felt becoming gratitude. Indeed, compared with the fortune which she had accumulated, the tax was, no doubt, insignificant in her estimation as compared with the desirability of endowing the Foundation with the comprehensive powers and purposes which she, as an incorporator, desired the Foundation to have.

In my opinion, the order denying a new trial should be affirmed.

MR. JUSTICE CHRISTIANSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.